George Descos v. Commissioner.
escos v. ommissioner.
Docket No. 25326.
United States Tax Court
1951 Tax Ct. Memo LEXIS 295; 10 T.C.M. (CCH) 270; T.C.M. (RIA) 51083; March 15, 1951
*295 Shirley N. Holland, Esq., 802 Northern Life Tower, Seattle 1, Wash., for the petitioner. W. E. Koken, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1942, 1943 and 1944 in the amounts of $668.19, $806.32 and $1,881.29, respectively, plus a 50 per cent fraud penalty for each year in the respective amounts of $334.09, $403.16 and $940.65. These questions are here presented, viz.: 1. Did respondent correctly determine petitioner's taxable income for the years 1942, 1943 and 1944? 2. If deficiencies exist in petitioner's income tax for 1942, 1943 and 1944, were they due in whole or in part to fraud upon the part of petitioner with the intent to evade the tax? 3. If there are deficiencies in petitioner's income tax in those years, and same was not due to fraud, are the assessments of such deficiencies barred by limitation? Findings of Fact We adopt the stipulation of facts and from it and oral testimony find: Petitioner is an individual residing in Seattle, Washington, and duly filed his income tax returns for the calendar years *296 1942, 1943 and 1944 with the collector of internal revenue for the district of Washington. Petitioner, a Greek immigrant, came to the United States in 1909 at the age of 19 years. He is uneducated, not having gone beyond the third grade in Greece and with no schooling here. He can sign his name, but can neither read nor write. He has always been single and without dependents. He has practiced frugality and always saved a portion of his earnings. From 1909 to 1918 he was variously employed as a laborer in mining and railroad work in Minnesota, Missouri, Nebraska, Nevada and Utah. For a time in 1914 he worked in a slaughter house in Utah. His average wage received during this period was $6 a day, and by 1918 he had saved from his earnings $2,900. In 1918 he commenced working in a restaurant in Ogden, Utah, owned by Pete Canavos, and on July 1, 1921, he purchased one-half interest in the restaurant, paying $2,200 in cash therefor out of his savings of $2,900. His partnership with Canavos continued until 1926, during which time petitioner's share of net income therefrom ranged from $300 to $700 per month. In 1926 Canavos sold his half interest to Jim Luvaris, a former dish-washer *297 in the restaurant, and after Luvaris bought into the restaurant, the business declined and petitioner and Luvaris could not get along and after an agreement petitioner sold his interest to Luvaris for $500 on January 4, 1928. While engaged in the restaurant business at Ogden, Utah, petitioner worked 12 hours daily, his living expenses were small, paying only $15 monthly room rent, took all meals at the restaurant and bought little clothing except clothes worn in the restaurant which were laundered at the expense of the business. By 1928, when petitioner sold his interest in the restaurant, he had accumulated $13,000 in cash from restaurant profits and savings from prior years. Being distrustful of banks, while a resident of Ogden, he never kept his individual money in the bank, but secreted it in the basement of the restaurant. Upon the sale of his restaurant in 1928, petitioner left Ogden, Utah, and worked as an employee in various restaurants in a number of western states, keeping an eye out for another restaurant in which to invest, and always keeping his money on his person. In 1932 he went to Seattle, Washington, where he continued to work and reside, with the exception of *298 occasional odd jobs in restaurants in other cities in Washington. Since 1937 he has continuously resided in Seattle. In 1937 petitioner, for $300, bought an interest in a Greek club located upstairs in a Seattle building. The profits from this club were small, but petitioner's share constituted his principal income up to and including all of the year 1942. In 1943 he received no income from the club, having severed his connection with it. After the sale of his restaurant in Ogden, Utah, petitioner, not having found what he deemed a desirable restaurant investment, had continuously kept his savings in cash and lived upon his income, and on December 23, 1942, he then had in excess of $12,000 in cash, which he decided to invest in part in corporate stocks, and he thereafter, out of such cash funds, made the following purchase of securities: 12-23-42
40 Am. Tel. & Tel. at 125
$ 5,016.40
11- 3-43
300 Marine Midland at 6
1,834.53
12-29-43
50 Beth. Steel at 55 1/2
2,791.39
6-12-44
100 Anaconda Copper at 25
2,500.00
On June 24, 1944, petitioner borrowed $5,000 from a bank in Seattle, which sum he used in the purchase of a one-fourth interest in the Columbian *299 Cafe in Seattle, and gave the bank as security therefor the corporate stocks then owned by him. He repaid $4,000 of the bank loan in 1944 and the balance of $1,000 he repaid in 1945. On January 1, 1942, petitioner's net worth was $13,000, all in cash, which he had saved in previous years. His taxable income for the taxable years was as reported by him, viz: 1942, $722.55; 1943, $393; 1944, $7,171.08. He was not guilty of fraud and had no intent to evade the income tax due by him. In 1949 respondent learned of stock purchases in the taxable years by petitioner from a local brokerage house, payments therefor having been made in currency, whereupon respondent, by the use of the net worth method of computing taxable income, and imputing to petitioner a net worth of zero as of December 31, 1941, determined the deficiencies in question, and the notice of deficiency was first mailed and received by petitioner on July 15, 1949, which determined income tax deficiencies for 1942, 1943 and 1944, totaling $3,355.80, and fraud penalties aggregating $1,677.90. Opinion We agree with the statement in respondent's brief that "this case will turn upon whether the Court is convinced that petitioner *300 did in fact possess $13,000 as of January 1, 1942". Evidently, if he did, respondent's determination that petitioner's net worth on that date was zero is not true. Since a zero net worth determination is the basis of the tax deficiencies in question, disproof of the correctness of respondent's determination destroys the foundation upon which respondent's case rests. We think our finding that petitioner did possess such sum is sustained by the evidence. It is a matter of common knowledge concerning the Greeks who come to this country that (1) an inclination to save is not an uncommon trait among them; (2) that they often engage in the restaurant business, and (3) many of them succeed therein. Petitioner's habits and conduct are therefore not unusual for one of his nativity, but in conformity therewith. There is corroboration as to the earnings which he claims to have saved. The major portion of the $13,000 petitioner says he earned and saved while a partner with Pete Canavos in the Ogden, Utah, restaurant. His volume of profits from such business is corroborated by the testimony of Pete Canavos' widow who worked in the restaurant at the time and who often witnessed the division *301 of profits between Canavos and petitioner. She testified that at times the monthly net profits each partner received was $1,000, but that the average monthly net profits of each partner was $750. She also testified that petitioner was stingy with his money, had no expensive habits of living, and saved much of what he made. We find it easier to believe petitioner's story that the funds invested by him in corporate stocks in the taxable years was money he had saved in previous years, rather than to accept respondent's theory that the funds so invested were acquired by petitioner after January 1, 1942, from some unknown source. Respondent's only suggestion as to its source, that same might have come from gambling, was shown to be untrue. We hold that petitioner correctly reported his income and there was no fraud or intent on his part to evade the income tax due by him. This disposition of the case makes it unnecessary to pass upon the plea of limitation. Decision will be entered for petitioner.