ADOLFO VILANOVA MAYÉN, demandante y apelado, *v.* SECRETARIO DE HACIENDA, demandado y apelante.

Número 11588.

*Reasignado:* 4 de junio de 1961. *Resuelto:* 26 de junio de 1961.

*José Trías Monge, Secretario de Justicia y Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelante; *Juan A. Faría,* abogado del apelado.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

En 3 de marzo de 1953 el Secretario de Hacienda notificó deficiencias finales al contribuyente Adolfo Vilanova Mayén en relación con sus declaraciones de ingresos para los años 1943, 1946, 1947, 1948 y 1949. Vilanova recurrió al Tri-

bunal Superior, y después de celebrado el juicio correspondiente, se dictó sentencia anulando en parte y confirmando en parte las deficiencias notificadas.

En el presente recurso el Secretario solicita se revise la sentencia dictada en cuanto dejó sin efecto las deficiencias basadas en el rechazo de las determinaciones administrativas atribuyendo al contribuyente ingresos no declarados por las cantidades de $51,516.80, $8,837.14 y $19,964.11 durante los años 1943, 1946 y 1948, respectivamente. También se impugna la resolución exonerándole del pago de penalidades impuestas por haber incurrido en negligencia o ignorado intencionalmente las disposiciones legales aplicables.

I

*Año 1943*

El contribuyente no tenía libros de contabilidad disponibles para la fecha de la investigación porque se le habían extraviado o los había destruido después de haberse efectuado una investigación anterior por el Negociado de Contribución sobre Ingresos en relación con los años 1944 y 1945. En vista de este hecho, el Secretario, utilizando el método de incremento de capital, determinó que Vilanova tenía un capital neto de $57,032.47 en 15 de agosto de 1943 [1] y después de deducir el ingreso neto percibido según la declaración presentada ascendente a $5,010.63, y de hacer varios ajustes, le imputó ingresos no declarados por $51,516.80.

Para una comprensión más fácil de la controversia, copiamos a continuación un estado para demostrar la forma en que el Secretario hizo su determinación:

*"Capital Neto a 8-15-43:*
*Activo*

| | |
|---|---|
| Efectivo en Bancos | $1,799.64 |
| Inventario de Mercaderías | 39,419.27 |
| Cuentas por Cobrar | 10,065.52 |

[1] El contribuyente rendía su declaración de ingresos por años económicos terminados en 15 de agosto.

| | | |
|---|---|---|
| Solar—Ave. Borinquen | $7,678.53 | |
| Edificio—Ave. Borinquen | 11,146.67 | |
| | $18,825.00 | |
| Menos: Reserva Depreciación | 130.04 | 18,694.96 |
| Mobiliario Oficina | | 1,160.60 |
| Automóvil y Camión | 3,020.00 | |
| Menos: Reserva Depreciación | 66.67 | 2,953.33 |
| | | $74,093.32 |

PASIVO Y CAPITAL

*Pasivo:*
Préstamo por Pagar:

| | |
|---|---|
| Jefferson Standard Life Insurance | $3,380.00 |
| Pagarés al Portador | 10,000.00 |
| Royal Bank of Canada—Santurce | 3,500.00 |
| Reserva Contribución Sobre Ingresos | 180.85 |
| Total Pasivo | $17,060.85 |

*Capital*

| | | |
|---|---|---|
| Beneficio no Retirado | $2,829.78 | |
| Beneficio aumentado por investigación | 54,202.69 | |
| | | $57,032.47 |
| | | $74,093.22 |

*Ingresos no Declarados*
Se determinaron como sigue:

| | | |
|---|---|---|
| Capital Neto a 8-15-43 | | $57,032.47 |
| Menos: | | |
| Ingreso neto según planilla | $5,010.63 | |
| Menos: | | |
| Gastos personales $2,000.00 | | |
| Income Tax 180.85 | | |
| | 2,180.85 | |
| | $2,829.78 | |

Más: Ajustes partida deducciones 2, 685. 89 5, 115. 67

Incremento en Capital (Ingresos
no declarados) $51, 516. 80

 La sección 14(b) de la Ley de Contribuciones sobre Ingresos de 1924 (13 L.P.R.A. sec. 693(b)) dispone que si un contribuyente no llevare libros de contabilidad, o si el sistema usado no refleja claramente su ingreso, su ingreso neto será computado de acuerdo con el sistema que en opinión del Secretario de Hacienda refleje claramente el ingreso.[2] Uno de los métodos que se utilizan en estos casos para determinar el ingreso tributable en un período contributivo específico es el de incremento o aumento de capital (net worth method).[3] *Jaeger Motor Car Co.* v. *Commissioner*, 284 F2d 127 (C.A. 7, 1960); *Vise* v. *Commissioner*, 278 F.2d 642 (C.A. 6, 1960); *Schultz* v. *Commissioner*, 278 F.2d 927 (C.A. 5, 1960); *Holt* v. *United States*, 272 F.2d 272 (C.A. 9, 1959).

[2] Esta sección corresponde con la sección 41 de la vigente Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. sec. 3041).

[3] Los otros dos métodos principales utilizados para determinar el ingreso cuando un contribuyente no lleva libros de contabilidad, o el sistema que usa no es adecuado o no refleja adecuadamente el ingreso, son los siguientes: *a)* método de porcentaje (percentage method) o de recómputo de ventas brutas, que consiste en determinar el beneficio tributable mediante la fijación de un porciento—generalmente un promedio de beneficios obtenidos por negocios similares—sobre el importe del beneficio bruto; *b)* método de examen de depósitos bancarios (bank deposit method), por el cual se consideran como ingreso tributable todos los depósitos bancarios, con excepción de aquéllos que puedan atribuirse a o identificarse como procedentes de fuentes no tributables, tales como redepósitos, transferencias, préstamos, etc.

Existen otras modalidades de estos métodos, que no es necesario exponer ahora. Véase, *Suspicion Versus Conviction in the Commissioner's Computation of Income: The adequacy of Records Under Section 41 of the Internal Revenue Code*, 98 U. Pa. L. Rev. 563 (1950). Sin embargo, deseamos consignar que corresponde al Secretario de Hacienda seleccionar el método para determinar el ingreso tributable del contribuyente, quien no puede insistir en que se utilice un método en particular. *Schellenbarg* v. *Commissioner*, 31 T. C. 1269 (1959); *United Dressed Beef Co.* v. *Commissioner*, 23 T. C. 879 (1955); *Morris Miller* v. *Commissioner*, T. C. Memo. 1955-112.

Este método descansa en la inferencia de que un aumento en el capital de un contribuyente en un período determinado se debe a ingresos percibidos durante dicho período, (⁴) o sea, se establece un ingreso adicional mediante evidencia indirecta o circunstancial. *Schultz* v. *Commisioner*, supra; *Davis* v. *Commissioner*, 239 F.2d 187 (C.A. 7, 1956); *Dupree* v. *United States*, 218 F.2d 781, 785 (C.A. 5, 1955). De ahí que es necesario fijar en forma adecuada un capital inicial (opening net worth) y el existente a la terminación del año contributivo (closing net worth), ya que la diferencia entre ambos es lo que representa, presuntivamente, el ingreso del período. En la práctica, se consideran además otros factores, y una fórmula adecuada para exponer el cómputo determinante del ingreso tributable sería considerar como minuendo el capital al finalizar el año contributivo y los gastos y como sustraendo el capital inicial y el ingreso declarado. (⁵) El resultado sería el ingreso no-declarado. (⁶)

Ahora bien, para que pueda sostenerse el método de incremento de capital a los fines de determinar el ingreso tributable, es preciso que el capital del contribuyente al comienzo

---

(⁴) *Holland* v. *United States*, 348 U. S. 121 (1954); *Thomas* v. *Commissioner*, 232 F.2d 520 (C.A. 1, 1956); *United States* v. *Ford*, 237 F.2d 57 (C.A. 2, 1956); *Clark* v. *Commissioner*, 253 F.2d 745 (C.A. 3, 1958); *Bond* v. *Commissioner*, 232 F.2d 822 (C.A. 4, 1956); *Estate of Phillips* v. *Commissioner*, 246 F.2d 209 (C.A. 5, 1957); *Blackwell* v. *United States*, 244 F.2d 423 (C.A. 8, 1957).

(⁵) Expresado en términos de una fórmula matemática, sería:

Capital final más Gastos, menos Capital inicial más Ingreso declarado = Ingresos no-declarados.

Véase, *The Net Worth Audit Problem and How to Meet it*, 35 Iowa L. Rev. 432 (1950); *The Defense of a Criminal Net Worth Tax Case*, 41 Cornell L. Q. 106 (1955).

(⁶) Ingresos no declarados e ingresos no identificados no son términos sinónimos, aunque en la práctica se hayan usado indistintamente. Sin embargo, tienen ciertas similaridades, y, considerados desde la posición en que la determinación del Secretario coloca al contribuyente, el proceso de comprobación por éste es muy parecido. Sobre ingresos no identificados, véanse, *Collazo* v. *Secretario de Hacienda*, 82 D.P.R. 650 (1961); *Vilanova* v. *Secretario de Hacienda*, 78 D.P.R. 807 (1955); *García* v. *Secretario de Hacienda*, 76 D.P.R. 503 (1954).

del período contributivo se establezca en forma clara y adecuada mediante evidencia competente. *Holland* v. *United States*, 348 U.S. 121 (1954) ; (⁷) *Cefalu* v. *Commissioner*, 276 F.2d 122 (C.A. 5, 1960), en donde se aclara que esta fijación del capital inicial no tiene que hacerse con precisión matemática; *Clark* v. *Commissioner*, 253 F.2d 745 (C.A. 3, 1948) ; *Gariepy* v. *United States*, 189 F.2d 459 (C.A. 6, 1951) ; *United States* v. *Fenwick*, 177 F.2d 488, 490 (C.A. 7, 1949) ; *Bryan* v. *United States*, 175 F.2d 223 (C.A. 5, 1949) ; *United States* v. *Chapman*, 168 F.2d 997 (C.C.A. 7, 1948). El Secretario debe descansar su "reconstrucción" del capital del contribuyente en bases razonables y no en meras conjeturas, *Polizzi* v. *Commissioner*, 265 F.2d 498 (C.A. 6, 1959), pues la fijación del capital inicial es una cuestión de hecho que está sujeta a revisión judicial para determinar si es claramente errónea, *Veino* v. *Fahs*, 257 F.2d 364 (C.A. 5, 1958) ; *Estate of Phillips* v. *Commissioner*, 246 F.2d 209 (C.A. 5, 1957). En *Rubino* v. *Commissioner*, 226 F.2d 291 (C.A. 6, 1955), se impusieron unas deficiencias a un contribuyente basadas en que su capital inicial era de cero; pero al no comprobarse que efectivamente no tenía capital para la fecha indicada, se anularon las deficiencias. Véase, *Rubino* v. *Commissioner*, 249 F.2d 444 (C.A. 6, 1957) ; *Descos* v. *Commissioner*, 10 T.C.M. 270 (1951). Spurgeon Avakian,

---

(⁷) El Tribunal Supremo de Estados Unidos dio su aprobación definitiva al método de incremento de capital para sostener una convicción por evadir el pago de contribución sobre ingresos en el caso de *Holland*. Para comentarios sobre este caso normativo en la materia, véanse, *The Holland Case, Analysis*, 35 Taxes 224 (1957) ; *Net Worth and Proof of Tax Evasion*, 4 De Paul L. Rev. 237 (1955). La jurisprudencia sobre el método de incremento de capital se ha desarrollado mayormente en torno a procesos criminales por fraude y evasión del pago de contribuciones, pero los principios expuestos en estos casos son de igual aplicación en pleitos de índole civil. En *Thomas* v. *Commissioner*, 232 F.2d 520, 524 (C.A. 1, 1956) se dice que "No obstante la diferencia existente entre la carga de la prueba en un proceso criminal y en un pleito civil sobre determinación de deficiencias . . . no vemos razón por la cual la fijación del capital inicial (opening net worth) sea menos decisiva para la validez del cálculo en uno que en otro caso."

una autoridad reconocida en la litigación contributiva en casos de fraude, califica la fijación del capital inicial como *"la obligación más importante"* que corresponde al gobierno para establecer un caso a base del método de incremento de capital.[8]

El incremento en capital no es suficiente por sí solo para que pueda atribuirse a ingreso tributable percibido durante determinado período. Es necesario establecer una fuente probable de ingresos, de la cual pueda deducirse razonablemente que se ha obtenido el ingreso. *Holland* v. *United States,* 348 U.S. 121, 137-8; *Thomas* v. *Commissioner,* 232 F.2d 520 (C.A. 1, 1956); cf. *United States* v. *Massei,* 355 U.S. 595 (1958); *Avakian, op. cit.,* pág. 619; Burns y Rachlin, *Trial by Net Worth,* 33 Taxes 121, 122 (1955).

Como el contribuyente Vilanova no tenía libros de contabilidad disponibles para la fecha en que se realizó la investigación, el Secretario de Hacienda podía utilizar el método de incremento de capital para determinar el ingreso tributable durante el año 1942-1943. Así intentó hacerlo, pero a nuestro juicio, al partir de la base de que éste no tenía capital alguno en 15 de agosto de 1942 y al fijar el capital para la fecha de la terminación del año contributivo (agosto 15 de 1943) considerando para ello el capital existente en años posteriores y otros activos cuya adquisición podía fácilmente justificarse en época anterior o que no pertenecían al contribuyente, incurrió en manifiesto error. Tampoco hizo un esfuerzo razonable para fijar el pasivo existente al comienzo del año contributivo. Parece aplicable a este caso el lenguaje utilizado para explicar el alcance de la sección

---

[8] Avakian, *Current Development in Net Worth Method of Establishing Fraud,* 1957 So. Calif. Tax Inst. 605, 609. Véase además, Avakian, *Net Worth Computation as Proof of Tax Evasion,* 10 Tax L. Rev. 431, 439 (1955).

Para otras defensas del contribuyente para controvertir la determinación administrativa a base del empleo del método de incremento de capital, véase, Balter, *Fraud Under Federal Tax Law,* 2a. ed. 1953, págs. 315-319.

41 de la Ley Federal de Rentas Internas: "El Congreso nunca intentó convertir la sección 41 en unos espejuelos con lentes bifocales que le permitan al Comisionado ver únicamente aquello que desea; que le permita cambiar de la parte inferior a la superior de los lentes para evitar observar un cuadro embarazoso de incremento de capital, hijo de su propia confección." *Byer, Net Worth and Civil Liability,* Proc. N.Y.U. 17th. Ann. Inst. Fed. Taxation 67 (1959). La impresión que hemos obtenido del análisis de la evidencia es que el funcionario que practicó la investigación prefirió no indagar sobre este particular, y al estructurar un capital fundado en datos incompletos, descansó en que a base de la presunción de corrección de las determinaciones administrativas, el recurrido se vería obligado a suministrar la información necesaria, que, como se verá, estaba accesible a dicho investigador. Una vez más se ha considerado la presunción de corrección como un amuleto que conjura todos los errores en que pueda haberse incurrido en la determinación administrativa. Aun cuando la referida presunción se extiende a aquellos casos en que el Secretario ha determinado el ingreso tributable utilizando el método de incremento de capital, esta determinación desaparece cuando aparece de su propia faz que es errónea, o palmariamente arbitraria o caprichosa, *Thomas* v. *Commissioner,* 232 F.2d 520 (C.A. 1, 1956); *Balter, Rules of Evidence Applicable in Proceedings Before the Tax Court of the United States: Burden of Proof and Presumptions,* pág. 23; y específicamente se ha sostenido que la presunción de corrección no se aplica en estos casos cuando se funda en meras conjeturas (guesswork), *Polizzi* v. *Commissioner,* 265 F.2d 495 (C.A. 6, 1959); *Shahadi* v. *Commissioner,* 266 F.2d 495 (C.A. 3, 1959); Proc. N.Y.U. 18th Ann. Inst. Fed Taxation 1051–1052 (1960). Ha llegado a insinuarse que en estos casos la presunción de corrección no tiene la misma fuerza. *Gunn* v. *Commissioner,* 247 F.2d 359, 362 (C.A. 8, 1957); cfr. *Carrión* v. *Tesorero*

*de P. R.*, 79 D.P.R. 371, 385 (1956) ; *Hormazabal* v. *Secretario de Hacienda*, 79 D.P.R. 221 (1956).

Una rápida ojeada a la forma en que el investigador determinó el capital del contribuyente en 1943 es suficiente para convencernos de que no cumple con los requisitos que impondría el tribunal menos exigente. El estado correspondiente lee como sigue:

### Activo

| | | |
|---|---:|---:|
| Efectivo en bancos | | 1, 799. 64 |
| Inventario de mercaderías: | | |
| Al principio: declaración sobre ingresos, año 1944 | | 39, 419. 27 |
| Cuentas por cobrar: declaración sobre ingresos, año 1944 | | 10, 065. 52 |
| Solar y casa, en avenida Borinquen esq. Calle 15, según escritura núm. 5, otorgada en San Juan el 5 de enero de 1943 | $18, 825. 00 | |
| Menos: | | |
| Reserva para depreciación | 130. 04 | 18, 694. 96 |
| Mobiliario de oficina: Según declaración de ingresos para 1944 | | 1, 160. 60 |
| Automóvil y camión: Según declaración de ingresos para 1944 y 1945 | $3, 020. 00 | |
| Menos: Reserva para depreciación | 66. 67 | 2, 953. 33 |
| | | $74, 093. 32 |

### Pasivo

| | |
|---|---:|
| Jefferson Standard Life Insurance Co. | $3, 380. 00 |
| Pagarés al portador—escritura Núm. 5 de 5 de enero de 1943, ante el notario Angel A. Vázquez y Sánchez | 10, 000. 00 |
| Royal Bank of Canada, Santurce | 3, 500. 00 |
| Total | $16, 880. 00 |

La prueba demuestra que el 18 de junio de 1936, don Juan Vilanova Pagán y don José María Arias constituyeron

una sociedad mercantil regular colectiva que giraba bajo la razón social "Vilanova y Compañía", a la cual se incorporó posteriormente Juan A. Vilanova Díaz como socio industrial; que en 14 de febrero de 1942 don Juan Vilanova Pagán cedió al apelado Adolfo Vilanova Mayén por precio de $5,000, que se confesaron recibidos antes del otorgamiento, su participación en la referida sociedad; que en 10 de octubre del mismo año, el apelado adquirió las participaciones de Arias y Vilanova Díaz, por las sumas de $176.70 y $117.80 que satisfizo en el acto del otorgamiento, adviniendo así a ser único dueño del negocio de ferretería de la sociedad; que la sociedad había adquirido un solar y edificio sito en la Avenida Borinquen del Barrio Obrero, que formaba parte del activo social que fue cedido al apelado [9] y que se valoró para esa fecha en $11,016.43; [10] que desde su inicio, el negocio de la sociedad funcionaba principalmente a base de crédito extendido por los bancos y los suplidores de mercadería y que esta práctica comercial continuó después de haber Vilanova adquirido el negocio; que mediante escritura número 371 de 23 de julio de 1946 ante el Notario Angel A. Vázquez, un hijo del contribuyente llamado Adolfo Vilanova Díaz compró un solar

---

[9] Si bien mediante escritura núm. 137 de 6 de octubre de 1942 ante el Notario Angel A. Vázquez, se transfirió el solar y edificio a doña Dominga Díaz, y luego mediante escritura núm. 5 de 5 de enero de 1943 Vilanova, para esa fecha único dueño del negocio, lo readquiere personalmente por el mismo precio que se había figurado en la venta anterior, esta transacción fue explicada satisfactoriamente como una simulada para obviar ciertas dificultades en relación con la cesión a Vilanova del interés del socio Arias, cuya esposa aparentemente se resistía a vender su participación en la sociedad. Es significativo que la venta a Dominga Díaz precedió la cesión de Arias a Vilanova por sólo dos días. Además, la prueba sobre el carácter simulado de la transacción no fue impugnada en forma alguna. Se deduce, por tanto, que Vilanova no hizo una inversión especial para adquirir este inmueble en 1943, ya que formaba parte del activo del negocio que adquirió por la suma total de $5,294.50. Si el edificio tenía el valor que se ha indicado de $11,016.43, con toda probabilidad las cuentas a pagar de la empresa excedían los inventarios y las cuentas a cobrar.

[10] El valor atribuido a este inmueble fue de $11,146.47, pero deducida la reserva por depreciación de $130.04, el valor neto se reduce a $11,016.43.

adyacente al que hemos hecho referencia anteriormente, y que fue transferido a la esposa del apelado en 4 de diciembre de 1947; ([11]) que la sociedad Vilanova y Compañía tenía en agosto 15 de 1942 mercaderías valoradas en $28,081.16, cuentas a cobrar por $2,718.42 y cuentas a pagar por $25,151.07; y finalmente, que el apelado no tenía durante el año contributivo otros negocios que no fuera el que adquirió de la sociedad.

De esta relación resulta claro que la determinación del Secretario del capital neto del contribuyente para el año terminado en 15 de agosto de 1943 no puede sostenerse. No sólo aparece de su propia faz que es errónea por los motivos indicados anteriormente, ([12]) sino que el contribuyente destruyó cualquier residuo de efectividad que pudiera restarle a la presunción de corrección demostrando palpablemente la imposibilidad de que hubiese tenido ingresos adicionales por la suma indicada de $51,516.80. Es cierto que el negocio de ferretería constituye la posible fuente de ingresos que es necesario establecer en estos casos en que se utiliza el método de incremento de capital para la fijación del ingreso neto, pero no puede ignorarse que si algo quedó demostrado fuera de toda duda es que el negocio del contribuyente, funcionando a base de crédito, fue obteniendo una escala ascendente de ganancias según se indica a continuación, ([13]) y que difícilmente a base de activo y pasivo del mismo según evidenciado por la declaración de ingresos para 1941–42 de Vila-

---

([11]) Este solar se valoró en el estado de activo transcrito anteriormente en la suma de $7,678.56. Resulta obvio que si el contribuyente no lo adquirió hasta 1947 no podía considerarse como un elemento de su patrimonio en 1943.

([12]) El Secretario no determinó capital inicial al 15 de agosto de 1942, a pesar de que se demostró que Vilanova hizo inversiones, y entre ellas, la de compra del activo social de Vilanova y Compañía. Cf. *Rubino y Commissioner*, 226 F.2d 291 (C.A. 6, 1955).

([13]) Los años 1944, 1945 y 1947 fueron objeto de investigación por el Secretario.

nova y Compañía, podía producirse un ingreso adicional de $51,516.80 en 1942–43: ([14])

| 1943 | $5,010.63 | 1946 | $20,561.76 |
|------|-----------|------|-----------|
| 1944 | 10,324.98 | 1947 | 39,232.31 |
| 1945 | 15,414.25 | 1948 | 28,058.75 |

## II
### Año 1946

 Para el año 1946 el Secretario determinó ingresos no declarados de $8,807.14 mediante el método de incremento de capital, en la forma siguiente:

| | |
|---|---|
| Capital a Agosto 15—1946 | $94,544.15 |
| Menos: Capital a Agosto 15—1945 | —77,012.20 |
| Aumento en Capital | 17,531.95 |
| Menos: Beneficio declarado durante el año 1945–46 disponible para el contribuyente | 8,694.81 ([15]) |
| Ingresos no declarados | $8,837.14 |

---

([14]) El estado de situación de Vilanova y Compañía a 15 de agosto de 1942 era el siguiente:

| Activo | | Pasivo | |
|--------|---|--------|---|
| Caja | 398.71 | Obligaciones a Pagar | 8,749.00 |
| Mercadería | 28,081.16 | Cuentas a Pagar | 25,151.07 |
| Mobiliario, etc. | 987.84 | Capital | 10,072.95 |
| Cuentas a Cobrar | 2,718.42 | Ganancia | 707.42 |
| Auto — Camión | 880.00 | | |
| Edificio | 11,614.31 | | |
| | $44,680.44 | | $44,680.44 |

([15]) Según la declaración presentada por el contribuyente, su ingreso neto para el año terminado en 15 de agosto de 1946 ascendió a $20,561.76. La contribución sobre ingresos ascendió a $4,870.32 y retiró $6,996.63 para gastos personales. El ingreso neto disponible para capitalización fue, por tanto, de $8,694.81.

La notificación contenía un estado de activo y pasivo del contribuyente al 15 de agosto de 1945 ([16]) y al 15 de agosto de 1946 ([17]) a los fines de determinar el capital inicial (opening net worth) y el capital al finalizar el año contributivo (closing net worth). El tribunal de instancia anuló la deficiencia por entender que el aumento señalado en el capital

---

([16]) El estado a 15 de agosto de 1945 es el siguiente:

ACTIVO

| | | |
|---|---|---|
| A—Efectivo en Bancos | | $14,231.62 |
| Bonos Defensa Estados Unidos | | 2,935.50 |
| B—Cuentas por Cobrar | | 28,049.23 |
| B—Inventario de Mercaderías | | 40,680.64 |
| C—Solares | | 8,602.53 |
| D—Edificios | $25,186.61 | |
| Menos: Reserva para Depreciación | 840.58 | 24,346.03 |
| E—Mobiliario de oficina | $1,382.50 | |
| Menos: Reserva para Depreciación | 232.05 | 1,150.45 |
| G—Vehículos de Motor | $3,320.00 | |
| Menos: Reserva para Depreciación | 791.33 | 2,528.67 |
| Total Activo | | $122,524.67 |

PASIVO Y CAPITAL

*Pasivo:*

| | | |
|---|---|---|
| Contribución sobre Ingresos | $2,472.47 | |
| F—Préstamos por Pagar | 43,040.00 | $45,512.47 |

*Capital:*

| | |
|---|---|
| Adolfo Vilanova Mayens | $77,012.20 |
| Total Pasivo y Capital | $122,524.67 |

([17]) El estado a 15 de agosto de 1946 es el siguiente:

ACTIVO

*Corriente:*

| | |
|---|---|
| Efectivo en Caja | $1,044.41 |
| Cuenta Corriente en Bancos | 5,519.19 |
| Cuentas por cobrar | 46,299.41 |
| Inventario de Mercaderías | 42,709.43 |
| Anticipos sobre Compras | 20,530.79 |
| Bonos Defensa Estados Unidos | 2,935.50 |
| | $119,038.73 |

neto fue el resultado "de inversiones de ahorros acumulados durante varios años anteriores por el contribuyente". Se refería sin duda a los beneficios netos obtenidos en 1944 y 1945 que montaron a $10,324.98 y $15,414.25.([18]) No obstante, parece claro que estos beneficios tienen que aparecer en alguna forma reflejados en el estado de situación utilizado para fijar el capital inicial en 15 de agosto de 1945, bien formando parte del efectivo en caja o en bancos, o mediante reinversión en el negocio. Si esa no era la situación real, *correspondía al contribuyente* demostrar que el estado era inadecuado y que sus activos al comienzo del período contributivo eran mayores. Hemos examinado detenidamente la prueba ofrecida, y contrario a lo ocurrido en el año 1943, no encontramos que el apelado destruyera la presunción de corrección de la determinación administrativa. Tampoco aparece de su faz que sea caprichosa o irrazonable.([19]) En estas condiciones, estimamos que la presunción de corrección

*Fijo:*

| | | |
|---|---|---|
| Terrenos | | $13,602.53 |
| Edificios | $25,186.61 | |
| Menos: Reserva para Depreciación | 1,344.31 | 23,842.30 |
| Mobiliario y enseres | $3,299.50 | |
| Menos: Reserva para Depreciación | 382.05 | 2,917.45 |
| Vehículos de Motor | $4,398.80 | |
| Menos: Reserva para Depreciación | 913.29 | 3,485.51 |

Total Activo Fijo 43,847.79

Total Activo $162,886.52

([18]) Es preciso recordar que a estas cantidades debe deducírsele lo satisfecho por contribución sobre ingresos y una suma razonable para gastos personales.

([19]) En el estado de capital a 15 de agosto de 1946, el investigador utilizó un informe de la intervención realizada por el contador Juan C. Villariny "para el año 1949" en lo que se refiere a las partidas de mobiliario de oficina ($3,299.50) y vehículos de motor ($4,398.80) que figuran en

debe prevalecer. *Friedberg* v. *United States*, 348 U.S. 142 (1954) ; *Smith* v. *United States*, 348 U.S. 147 (1954) ; *United States* v. *Skidmore*, 123 F.2d 604 (C.C.A. 7, 1941) ; *United States* v. *Chapman*, 168 F.2d 997 (C.A. 7, 1948).

Como indicamos anteriormente, el método de incremento de capital para la determinación del ingreso neto se ha utilizado generalmente cuando el contribuyente no lleva libros de contabilidad, o éstos no reflejan claramente el ingreso. Antes de 1954 se había sostenido que no podía recurrirse al mismo cuando los libros fueran adecuados. *United States* v. *Riganto*, 121 F. Supp. 158 (Va. 1954) ; *United States* v. *Williams*, 208 F.2d 437 (C.A. 3, 1953) ; *Remmer* v. *United States*, 205 F.2d 277 (C.A. 9, 1953) ; *Hooper* v. *United States*, 216 F.2d 684 (C.A. 10, 1954) ; *Wittermore* v. *Commissioner*, 7 T.C.M. 845 (1948) ; *Glackman* v. *Commissioner*, 10 T.C.M. 1132 (1951), en donde se dijo que a menos que los libros fueran inadecuados o incompletos, el gobierno estaba obligado a presentar alguna otra evidencia para sostener la inferencia de la existencia de ingresos no declarados. La cuestión parece haber sido resuelta en forma definitiva en la opinión emitida por el Tribunal Supremo de Estados Unidos en el caso de *Holland,* que estableció que dicho método podía ser utilizado aun cuando los libros, de su faz, aparecieran correctos, pues no se trata, estrictamente hablando, de un sistema de contabilidad. Cualquier otra interpretación conduciría a premiar la consistencia en la forma de llevar unos libros, en lugar de su veracidad. Véase, Anotación, *Use of net worth method in prosecution for evasion of federal income tax,* 99 L.Ed. 167, 171 (1954).

En cuanto al año contributivo 1946, el Secretario podía

el activo. Aunque existe la posibilidad de que estas partidas se incluyeran indebidamente o sea, en exceso del valor real atribuible en dicha fecha, nos encontramos con que el informe de referencia no fue ofrecido en evidencia, y estamos impedidos de hacer la comprobación debida. De todas formas, cualquier error en este sentido sólo produciría los ajustes correspondientes, pero no la nulidad de la deficiencia total.

determinar el ingreso neto del contribuyente utilizando el método de incremento de capital, a pesar de que éste llevaba libros. En ausencia de una explicación satisfactoria, y a pesar de que este método ha sido calificado de especulativo cuando la diferencia resultante entre la declaración del contribuyente y la determinación administrativa no es sustancial, *Sasser* v. *United States*, 208 F.2d 535; *United States* v. *Schenck*, 126 F.2d 702 (C.C.A. 2, 1942), debe prevalecer por no haberse controvertido la presunción con evidencia competente.

## III
### *Año 1948*

Como debido a ciertas entradas de contabilidad hechas en 1949, pero efectivas en 15 de agosto de 1948, se aumentó la cuenta "Capital" en la suma de $19,964.11, el, Secretario determinó que el contribuyente tuvo para dicho año contributivo ingresos no-declarados por la misma cantidad. Las entradas por $2,196.86 y $17,767.25 se cargaron a "Cuentas en Suspenso" y "Cuentas a Pagar". La posición del contribuyente es que esta cantidad representa exclusivamente entradas de contabilidad correspondientes a reajustes de años anteriores y que en forma alguna constituyen ingresos tributables durante el año 1948, a pesar de haberse aumentado el capital.

La prueba presentada revela que el reajuste de $17,767.25 se debió a una discrepancia existente entre el balance en los libros de las cuentas a pagar y el verdadero balance de cuentas a pagar. Para 1948, el balance en el libro mayor de dicha cuenta era de $71,041.99, pero mediante comprobación efectiva con los acreedores resultó ser de sólo $53,274.74. Específicamente declaró el empleado que hacía los asientos en los libros que estos ajustes obedecieron a errores cometidos en los años anteriores 1944, 1945, 1946 y 1947, y señaló como ejemplo ciertas entradas practicadas en relación con un crédito a favor de Earl K. Burton Inc. y ciertos cargos de la

cuenta "Anticipos a Suplidores". Respecto al ajuste en las "Cuentas en Suspenso" por $2,196.86, indicó que se debió a la diferencia surgida entre el débito y el crédito al cierre de las operaciones mercantiles en el año 1947–48. No señaló específicamente las partidas responsables de la diferencia porque debido a la investigación que se practicaba por el Negociado de Contribución sobre Ingresos no disponía del tiempo necesario. Mientras tanto—y hasta que se determinara la procedencia de la discrepancia, si de una cuenta de gastos o una de capital—se cargó la misma en la forma indicada.

A nuestro juicio, la evidencia presentada por el contribuyente, y no contradicha en forma alguna, demostró palmariamente que éste no tuvo los ingresos adicionales que se le imputan en este año contributivo y que el aumento en capital obedeció más bien a meras entradas de contabilidad para corregir diferencias de *años anteriores*. Estamos conscientes que existe la posibilidad de que en virtud de la conclusión a que hemos llegado, se escapen de tributación ingresos percibidos por el contribuyente, pero no nos corresponde determinar ahora si procedía incluir los mismos en las declaraciones de dichos años anteriores, ni las consecuencias de su omisión.[20] Parece ser de aplicación aquí lo expresado desde 1933 en *Loíza Sugar Co.* v. *Domenech*, 44 D.P.R. 556, 562 (1933) al efecto de que "El gobierno no puede inventar ingresos a base de errores en la forma de llevar los libros el contribuyente porque la imposición y la determinación del ingreso neto tributable descansa en hechos ciertos y no en teorías, tecnicismos o entradas en libros de contabilidad." Véase, *D. Velasco & Co.* v. *Sancho Bonet*, 51 D.P.R. 56, 58 (1937); cf. *Cooper-Brannan Naval Stores Co.*, 9 B.T.A. 105 (1927). En

---

[20] Cualquier error que se refiera a entradas anteriores a 1946 incrementaría el capital del contribuyente, y por tanto, podría explicar en parte la diferencia en el capital neto que como ingresos no declarados dio lugar a la deficiencia notificada para dicho año, que confirmaremos de conformidad con la discusión que aparece en el apartado II de esta opinión.

Mertens, *op. cit.*, sec. 6.09, se expone la regla aplicable en términos muy precisos: "Los hechos verdaderos, y no los asientos de contabilidad, gobiernan la determinación del ingreso tributable."

En cuanto a la penalidad de cinco por ciento por "negligencia o ignorancia intencional de las reglas y reglamentos", creemos que debido a las circunstancias que rodean la determinación de la deficiencia, no es este un caso apropiado para su imposición. El contribuyente informó su ingreso a base de las constancias de sus libros. El aumento en el ingreso tributable no obedeció a errores deliberados en la preparación de la declaración. *P. R. Telephone Co.* v. *Secretario*, 79 D.P.R. 895, 938 (1957); Mertens, *op. cit.*, sec. 55.25.

*Por los motivos expuestos la sentencia dictada por el Tribunal Superior, Sala de San Juan, será modificada en el sentido de que el contribuyente tuvo ingresos no declarados en el año 1946 de $8,837.14, y así modificada, se confirma.*