VALENTÍN POLANCO DE JESÚS y EMILIO REYNES, demandantes, apelados y apelantes, *v.* SANTIAGO RUIZ LÓPEZ y el MUNICIPIO DE CIALES, demandados, apelante y apelado el primero.

Núm. 7653.—*Sometido:* Diciembre 15, 1938. *Resuelto:* Diciembre 23, 1939.

*Juan B. Soto* y *Enrique Igaravídez,* abogados del apelante y apelado; *V. Polanco de Jesús, pro se* y *Luis Mercader,* abogados de los apelados y apelantes.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

La corte de distrito declaró sin lugar una excepción previa presentada por el demandado Ruiz López de falta de hechos suficientes para determinar una causa de acción. Más tarde, durante el curso del juicio, la corte denegó una moción para eliminar la misma causa de acción. Ruiz López descansó y aún descansa en los artículos 1252, 1253 y 1254 del Código Civil (edición de 1930). Aunque el Municipio de Ciales fué debidamente citado no compareció en el procedimiento.

La primera causa de acción, según ha sido expuesta en una demanda enmendada, fué en síntesis como sigue:

Que los demandantes eran dueños de una casa y solar que se describen en la demanda y que aparecen inscritos en el registro de la propiedad al folio 97 del tomo 57 de Ciales. Los demandantes y sus predecesores han venido poseyendo dicha finca civil y materialmente, quieta y públicamente, sin ninguna interrupción y como únicos dueños desde hace más de 40 años. El demandado Ruiz López compró en febrero 28, 1928, a Sucesores de F. Pintucles & Cía. una casa y solar de nueve metros noventa centímetros de frente a la calle Victoria, hoy Palmer, que es el Poniente, y dieciséis metros cuatro centímetros de fondo, lindante por el Este en parte con propiedad de los demandantes y en parte con otra propiedad de Sucesores de F. Pintueles & Cía. Que la casa ocupaba toda la extensión frente y fondo del mencionado solar, y así les constaba a ambos demandados, ya que el Municipio le traspasó a Ruiz López y midieron de acuerdo tal terreno. En 1930, Ruiz López, sin notificación alguna al entonces dueño del solar de los actores, el incapacitado Fernando José Fernández Vega, inexactamente informó al Municipio de Ciales que él había remensurado su solar, encontrando que en vez de dieciséis metros cuatro centímetros de fondo, tenía veinticuatro metros. De ese modo obtuvo del Municipio, e inscribió en el registro de la propiedad, una escritura de enajenación en abril 25, 1930, en la que se describía el solar con un fondo de veinticuatro metros. Los ocho metros adicionales que se describen en la demanda como una faja rectangular de terreno de once pies de ancho, formaban parte de una finca perteneciente a los demandantes. Desde 1930, en que Ruiz López consiguió la escritura del Municipio e inscribió la misma, así como antes y después y hasta la radicación de la demanda, a él le constaba que el Municipio de Ciales nunca había sido dueño del predio de once pies de frente por ocho metros de fondo descrito en la demanda y nada tenía que ver con tal porción. Por el contrario ambos demandados habían sabido y sabían que tal faja pertenecía exclusivamente a los antecesores de los demandantes, que la habían estado poseyendo y la poseen todavía, por más de cuarenta años como solos dueños, pública y pacíficamente, sin ninguna interrupción; y a pesar de ello llevaron a cabo la expresada documentación e inscripción a base de la inexactitud expresada. Ruiz López, amparándose en tal titulación, se ha introducido en esa porción de terreno de los demandantes, ha destrozado las flores y arbustos allí sembra-

dos y cultivados por más de 16 años por los demandantes, ha destruído una cerca de madera y tela metálica puesta en la colindancia Sur del solar de los actores desde hace 16 años y recientemente destruyó una pared levantada por los demandantes en tal porción y contigua a la pared trasera o espalda de la casa-botica de Ruiz López, quien aún hoy en día amenaza a los actores con continuar poseyendo y controlando tal porción y alegando de palabra y por escrito que es dueño de ella y que ha tolerado a los demandantes que sembraran allí las flores y arbustos indicados. Se suplicaba se dictara sentencia al efecto de que la faja de ocho metros estaba incluída en el solar que se describe en la demanda como perteneciente a los demandantes; que la escritura de abril 25, 1930 y la inscripción de la misma en el registro de la propiedad, son ineficaces, nulas e inexistentes y no afectan el título dominical íntegro de los actores y dejando a éstos disfrutar su propiedad de manera tranquila y expedita como únicos dueños indivisos.

Ésta era y es, a nuestro juicio, una acción para resolver reclamaciones opuestas (*to quiet title*) autorizada por el artículo 282 del Código de Enjuiciamiento Civil.

Los demandantes no trataban de invalidar o anular la escritura de abril 25, 1930, como documento anulable. Su fin era establecer la nulidad absoluta de esa enajenación y en su consecuencia eliminar cualesquiera dudas que hubiera sobre su título. Los artículos 1252 y siguientes del Código Civil nada tienen que ver con el caso.

Lo dicho anteriormente resuelve los cinco primeros errores señalados en el alegato del demandado apelante.

· ■ Los demandantes ofrecieron como prueba copias certificadas de asientos en el registro de la propiedad en que se hacían constar que la casa y el solar descritos en la demanda eran propiedad de los demandantes. Al inquirir el letrado del demandado el objeto con que se presentaba dicha prueba, el abogado de los demandantes manifestó que lo hacía para justificar el título dominical de los demandantes y la historia de la finca por un período de más de cincuenta años. El demandado se opuso basado en que debían presentarse las escrituras mismas para determinar la validez del

título de los demandantes. El juez admitió el documento para el solo efecto de demostrar que la finca estaba inscrita en el registro de la propiedad a nombre de los demandantes; no para demostrar que los demandantes fueran dueños de la propiedad, sino para demostrar que la finca estaba inscrita en el registro de la propiedad como perteneciente a los demandantes. El documento demostraba que según el registro los demandantes y sus predecesores habían sido dueños de la propiedad desde 1881. Era admisible para dicho fin.

Más tarde, la corte admitió como prueba copia certificada de las inscripciones del título del demandado. Al ser ofrecido ese documento en evidencia, el demandado se opuso porque del documento se desprendía que el demandado tan sólo había adquirido la casa de Pintueles, mientras que los demandantes habían alegado tanto la enajenación de la casa como del solar. El letrado de los demandantes manifestó que Pintueles únicamente había vendido la casa y que la alegación contenida en la demanda sobre la enajenación tanto de la casa como del solar estaba equivocada. El demandado apelante señala como error en su alegato el haberse admitido este documento. Se conforma con descansar en las razones ya expuestas en apoyo de su contención de que la corte erró al admitir la copia certificada de la inscripción del título de los demandantes. Toda discusión del punto que así se trata de levantar resultaría superflua.

A Joaquín Torres Noriega, socio gestor de F. Pintueles & Cía., luego de declarar que desde 1907 había conocido la finca que se describe en la demanda como perteneciente a los demandantes, se le preguntó quién había estado en posesión de la misma. El demandado se opuso fundado en que esto se desprendía del certificado del registrador. El letrado de los demandantes manifestó que la cuestión era si el testigo sabía quién había estado en posesión de la finca. El demandado entonces se opuso basado en que no se trataba de un pleito de reivindicación, sino de uno sobre nulidad de escritura y sobre negatoria de servidumbre. El abogado de los

demandantes citó de la súplica de la demanda. Si estamos en lo cierto en la conclusión a que ya hemos llegado sobre la naturaleza del pleito, la objeción fué debidamente declarada sin lugar.

■ Al preguntarse a Torres Noriega si sabía qué ancho tenía la propiedad por el frente, el abogado contrario manifestó que había documentación que demostraba eso. El testigo no contestó la pregunta pero se le pidió que nombrara el dueño de la propiedad contigua por el Sur. El demandado manifestó que las colindancias se desprendían de los documentos ya presentados. El juez dijo que aunque se hubieran presentado documentos el testigo podía declarar sobre las colindancias, si es que las conocía, porque el objeto es corroborar el título; que en caso de que hubiera confusión o discrepancia la corte determinaría cuál tenía razón; que el testimonio se ofrecía para corroborar solamente; que debía tratarse de preguntar lo menos posible sobre eso. El demandado no excepcionó la resolución de la corte. En respuesta a nuevas preguntas el testigo manifestó que la propiedad lindaba por el Sur con Sucesores de F. Pintueles & Cía.; por el Oeste con el Municipio de Ciales y Ruiz López y por el Este con Pintueles. No hallamos que la corte cometiera error en su resolución. La única supuesta contradicción alegada en el alegato del apelante fué insignificante, más aparente que real, y quedó enteramente explicada por otra prueba y por otros documentos. El error, de existir, no fué perjudicial.

■■ En la escritura de rectificación otorgada el 25 de abril, 1930, las partes hicieron constar ante el notario que por otra escritura de 23 de enero de 1930, Álvaro Corrada, en su carácter de Alcalde del Municipio de Ciales, vendió a Ruiz López un solar radicado en la calle Palmer, que medía nueve metros noventa centímetros de frente por dieciséis metros cuatro centímetros de fondo, lindante al Sur con otro solar propiedad del Municipio, donde está enclavado un edificio de la sociedad mercantil Sucesores de F. Pintueles &

Cía., y por el Este con otro solar propiedad del Municipio, cedido en usufructo a la misma sociedad Sucrs. de F. Pintueles & Cía.; que el Sr. Ruiz había construido en el descrito solar una casa de mampostería que anteriormente medía nueve metros noventa centímetros de frente por diez metros treinta centímetros de fondo, pero que al tiempo de la rectificación medía nueve metros noventa centímetros de frente por dieciséis metros cuatro centímetros de fondo, o sea una capacidad igual al solar en donde está enclavada.

Corrada también manifestó que el solar antes descrito, al ser medido, resultó tener un área de 24 metros cuatro centímetros de fondo por nueve metros noventa centímetros de frente, o sea ocho metros más de fondo que el número de metros calculado al tiempo en que se efectuó la venta anterior.

Mientras Corrada declaraba como testigo de los demandantes se le preguntó "¿quién estaba detrás de la pared de la botica hacia el Saliente?" El testigo contestó que Valentín Polanco y Pintueles. El demandado solicitó se eliminara esta contestación por estar en contradicción con un documento que ya se había presentado como prueba.

El juez manifestó que lo único que se podía preguntar era, no la dimensión exacta, sino si había un patio, si la casa de Polanco tenía un patio atrás, pero que no se podían corregir las dimensiones con prueba oral. Ambos letrados argumentaron entonces la cuestión, mas de los autos no se desprende la naturaleza de sus argumentos. Luego de oír la discusión el juez dijo que lo único que admitía como pregunta al testigo es si cuando firmó la escritura ésa hizo alguna mensura o actuó meramente por referencia, pero no si ello era cierto o no; que no permitiría que el testigo declarara que lo consignado en la escritura por él como Alcalde a favor del demandado Ruiz López no era la verdad; que la corte permitiría que se preguntara si cuando hizo la escritura de rectificación actuó a virtud de alguna mensura que hiciera o meramente por referencia de que el terreno que se había vendido pre-

viamente no era todo lo que comprendía el solar. El abogado de los demandantes manifestó que lo de la segunda escritura vendría más tarde. No se tomó excepción a la resolución de la corte. Dicha resolución pudo haber sido dictada más en respuesta al argumento del demandado que a la moción para eliminar, pero el apelante no se queja de que no se resolviera la cuestión exacta levantada por la moción. Sea ello como fuere, el demandado no insistió en que se resolviera directamente la moción para eliminar. Según demuestra concluyentemente otra prueba, la firma de Sucesores de Pintueles & Cía. era uno de los predecesores de Polanco y la discrepancia existente entre la descripción que se hacía en la escritura y la declaración del Alcalde respecto a la colindancia por el Este del solar de Ruiz López, no era cuestión que tuviera importancia vital.

Posteriormente se le preguntó al testigo si al tiempo de la segunda escritura había hecho algo personalmente o si había descansado en informes recibidos de otra persona. El demandado se opuso a que se hicieran preguntas sobre los motivos que tuviera la parte para actuar y dijo que "lo que se incorpora en un documento público, se presume que los hechos anteriores están fijados por las partes." El juez manifestó que la cuestión fué resuelta. Que la corte permitiría que se pregunte al testigo si cuando hizo la segunda escritura había consultado algún documento oficial o si hizo alguna mensura sobre el terreno. El letrado del demandado agregó "siempre que no esté en contradicción con lo que aparezca en la escritura" y se anotó una excepción. El juez entonces preguntó al testigo si había consultado algún documento oficial o si había hecho alguna mensura sobre el terreno cuando otorgó la segunda escritura. El testigo contestó negativamente. Al preguntársele si había consultado algo el testigo contestó que había otorgado la escritura solamente por información recibida de Ruiz, que fué a su oficina con un abogado.

La Sección 25 de la Ley de Evidencia, que hoy en día es el Artículo 387 del Código de Enjuiciamiento Civil (edición de 1933) provee:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

"1. Cuando una equivocación o imperfección en el documento fuere alegada en litigio.

"2. Cuando la validez del convenio constituyere el hecho controvertido.

"Pero este artículo no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en el artículo veinte y ocho, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes."

Los demandantes no comparecieron en la escritura de rectificación de 25 de abril de 1930, ni eran representantes o causahabientes de ninguna de las partes en dicha escritura. Esto, sin más, basta para hacer caer el presente caso dentro de la bien conocida excepción a la regla sobre prueba oral (*parol evidence rule*), a menos que el hecho de que el demandado Ruiz López y el municipio demandado, representado por Corrada, en su carácter de alcalde, tienda a evitar ese resultado. Véanse 2 Jones on Evidence, Sección 449, pág. 858, y 5 Wigmore (2da. edición) Sección 2446, pág. 342.

La declaración de Corrada también tendió a explicar, a nuestro juicio, una ambigüedad extrínseca, revelando circunstancias adicionales que no se mencionaron en la escritura y trayendo así a la luz todas las circunstancias en que se celebró el convenio, en vez de parte de ellas únicamente.

Sea ello como fuere, el presente recurso, conforme ya hemos demostrado, fué iniciado para establecer la nulidad absoluta de la escritura.

Sea ello como fuere igualmente, Corrada no había manifestado al notario que había consultado ningún documento oficial, que había medido el solar, que había presenciado la mensura o el resultado de la misma, o que no hubiera actuado por información y creencia. La declaración del Alcalde no varió, modificó ni contradijo las aseveraciones hechas por él al notario.

Cuanto dejamos expuesto cubre las cinco subdivisiones del noveno señalamiento.

◼ Los señalamientos séptimo, undécimo, duodécimo y décimotercero son en síntesis que la corte erró: en la apreciación de la prueba; al dar por probado que el título de los demandantes a la faja de terreno en controversia es superior al del demandado apelante; al sostener que el municipio no podía vender al demandado apelante el solar descrito en la segunda escritura; al sostener que los demandantes están y han estado durante los últimos años en posesión de la faja de terreno objeto de esta acción.

Por las razones que ya hemos expuesto al discutir la suficiencia de los hechos aducidos en la demanda, no podemos asumir con el demandado apelante que para justificar una sentencia en favor de los demandantes era necesario llegar a la conclusión de que la segunda escritura de enajenación en que se basaba el demandado Ruiz fué obtenida del municipio mediante dolo y fraude. Los demandantes y sus predecesores habían estado en posesión de la faja en controversia, en calidad de dueños según el registro, por espacio de medio siglo aproximadamente, con anterioridad a la fecha en que se otorgó la segunda escritura. Admitiendo, al igual que lo hizo el juez de distrito, que en realidad ellos no fueran los dueños absolutos, sino meros usufructuarios, no obstante el municipio como dueño de la nuda propiedad, carecía de facultad para vender la propiedad a persona distinta al usufructuario, sin la celebración de una subasta. Véanse los artículos 71, 72 y 73 de la Ley Municipal (Leyes de 1928, pág. 393). Por tanto, la segunda enajenación fué absolutamente nula.

En lo que a la primera causa de acción se refiere, no hallamos que la corte inferior cometiera error en la apreciación de la prueba.

Los señalamientos sexto, octavo, décimo y décimocuarto son al efecto de que la corte de distrito erró: al declarar con lugar la primera causa de acción; al no imponer las costas a los demandantes apelados; al sostener que los demandantes probaron que eran dueños del solar descrito en su demanda; al declarar sin lugar la contrademanda.

El sexto señalamiento ha sido sometido como corolario de los otros señalamientos ya discutidos. El décimo no ha sido discutido en el alegato del demandado apelante. Los señalamientos octavo y décimocuarto carecen igualmente de méritos.

 La sentencia contenía pronunciamientos al efecto de que:

Los demandantes no tenían derecho a obtener el cierre de la puerta-ventana en la pared del fondo de la casa del demandado, y en caso de construir los demandantes cualquier edificación permanente sobre su solar, en colindancia con la finca del demandado, deberían cumplir con lo dispuesto en el artículo 521 del Código Civil; el demandado Ruiz López no es responsable de los daños alegados; cada parte pagará sus costas.

Los demandantes apelan de esta parte de la sentencia.

En 1880 Vicente Martínez compró la casa que fué más tarde adquirida por el demandado Ruiz. Ésta fué descrita como que tenía un aljibe y un corral y como que ocupaba un solar que tenía 9 varas de frente por 12 de fondo. Cuando Ruiz adquirió la casa en febrero de 1928, se describió ésta como que tenía un aljibe y un corral (aunque se hizo constar que el aljibe ya no existía) y como que había sido construída en un solar que medía 9 varas de frente por 12 de fondo, solar que a virtud de arreglos con el municipio medía en aquella fecha 9 metros noventa centímetros de frente por 16 metros 4 centímetros de fondo. Se decía que la casa misma medía nueve metros noventa centímetros por diez metros treinta centímetros de fondo.

Ruiz destruyó una habitación o martillo de madera que había sido construído en la parte posterior de la casa de mampostería que se describe en la escritura. Entonces fabricó cerca o junto al límite Este del solar una pared de concreto con dos huecos, uno de los cuales el juez de distrito lo describe en una ocasión como "ventana" y en otras como "puerta-ventana." Éste es el hueco que los demandantes trataban de cerrar. La estructura de madera que estaba en la parte posterior del edificio de mampostería tenía huecos similares. El juez de distrito llegó a la conclusión de que los huecos en la pared de concreto estaban en el mismo sitio que lo habían estado los huecos en la estructura de madera. A no ser por esta conclusión, la nuestra muy bien podría ser que uno de los huecos en la pared posterior de la estructura de madera daba acceso a un corral (parte del solar de Ruiz) y el otro, que aparentemente no se usaba como puerta, recibía luz y aire del mismo corral—no directamente de la propiedad contigua al Este, como ocurre con la ventana o puerta-ventana sustituta abierta en la pared de concreto. Tal conclusión nuestra hallaría no sólo amplio apoyo en las declaraciones de los testigos, sino que también estaría mucho más en armonía con la tendencia uniforme de la prueba documental. Un factor sobresaliente en esa prueba es la manifestación hecha por Ruiz ante el notario que redactó la escritura de enero 23, 1929. Esta manifestación fué:

"... que es dueño y tiene inscritas en dominio, las siguientes fincas:

"(A) Urbana: Casa construída en la calle Palmer de Ciales, de mampostería y zinc, que anteriormente medía 9 metros 90 centímetros de frente por 10 metros 30 centímetros de fondo, pero en la actualidad, por haber sido construída la parte que tenía de corral, mide 9 metros 90 centímetros de frente por 16 metros 4 centímetros de fondo, o sea, una capacidad igual al solar en donde está enclavada."

Empero, según el criterio que hemos formado del caso, la cuestión de si cualquier error en la conclusión del juez de

distrito fué tan manifiesto que exija la revocación, no necesita ser resuelta por ahora.

En *Rabell* v. *Rodríguez*, 24 D.P.R. 561 y *Rodríguez* v. *Colón*, 34 D.P.R. 78, las puertas daban a la propiedad del demandado. Ninguno de estos dos casos sirve de autoridad para la proposición de que las cortes no tienen facultad para obligar a que se cierre una puerta que da directamente a la propiedad de un dueño contiguo.

En el presente caso el marco de la ventana o puerta-ventana estaba como a un metro o a metro y medio sobre el nivel del terreno. No podía utilizársele como puerta sin el uso de una escalera o de unos peldaños exteriores sobre la propiedad de los demandantes. No podía usársele como tal sin penetrar y pasar por sobre parte de la finca de los demandantes. Un camino es una servidumbre discontinua que no puede adquirirse por prescripción. Aun si Ruiz, sin protesta u objeción por parte de los demandantes, o de sus predecesores, hubiera construído una escalera de concreto y un camino de concreto o asfalto a través de la propiedad de los demandantes, no obstante, de conformidad con la opinión de la mayoría de este tribunal en el caso de *Martínez Rodríguez* v. *Central Cambalache*, 48 D.P.R. 216, confirmada en *Central Cambalache* v. *Martínez Rodríguez*, 82 F. (2d) 37, una servidumbre de paso no hubiera podido adquirirse por prescripción. Véase también el luminoso artículo del Juez Otto Schoenrich intitulado ''Acquisition of Rights of Way by Prescription'' en el número de febrero de 1938, de Tulane Law Review, núm. 2, tomo 12, pág. 226.

De todos modos, el juez de distrito no resolvió que la ventana o puerta-ventana en controversia fuera una puerta más bien que una ventana, o que en época alguna fuera utilizada para entrar o salir del edificio. No hallamos en la prueba una base satisfactoria para llegar a tal conclusión.

El hueco, no obstante su forma y tamaño, fué diseñado y usado principalmente por lo menos para permitir que el

aire y la luz penetraran, mas no para entrar y salir las personas. Era una ventana y no una puerta. Véase *Valls v. Rosado,* 52 D.P.R. 329.

Las servidumbres continuas y aparentes pueden adquirirse por prescripción. El período estatutario es de 20 años. Artículo 544 del Código Civil. El tiempo de la posesión se contará en las positivas "desde el día en que el dueño del predio dominante, o el que haya aprovechado la servidumbre, hubiere empezado a ejercerla sobre el predio sirviente." En las negativas empieza a contarse "desde el día en que el dueño del predio dominante hubiere prohibido por un acto formal al del predio sirviente la ejecución del hecho que sería lícito sin la servidumbre." Artículo 545. Las servidumbres de luces y vistas son negativas y de ordinario son tanto aparentes como continuas. *Iglesia Católica, etc.* v. *Combate Tobacco Corp.,* 42 D.P.R. 376. El único acto ejecutado por Ruiz que podría considerarse como que prohibía a los demandantes hacer algo inconsistente con la existencia de una servidumbre fué la destrucción de la pared erigida por los demandantes o por uno de ellos sobre su propia finca al lado contrario de la ventana en disputa. La forma en que se destruyó esta pared tuvo por resultado el daño ocasionado a los arbustos y flores descritos en la demanda. La muralla fué construída poco antes de salir el sol en la madrugada del 10 de noviembre de 1935. Fué destruída en la mañana del mismo día. La demanda fué radicada el 19 de marzo de 1936. No existía base para que se alegara la existencia de una servidumbre por prescripción o en alguna otra forma. Es justo añadir que el demandado no alegó tal cosa en su contestación, sino que se conformó con negar el título de los demandantes a la propiedad que se describe en la demanda como perteneciente a ellos y en aseverar que el demandado era dueño del solar por haberlo comprado del municipio.

Hemos discutido la cuestión de prescripción tan sólo porque el juez de distrito basó su sentencia, en tanto en cuanto la misma fué adversa a los demandantes, principalmente en

la teoría de prescripción. Este criterio, desde luego, pasa por alto los preceptos claros del Artículo 545 supra.

El juez de distrito resolvió que los demandantes no tenían derecho a daños y perjuicios por la destrucción de la cerca construída por ellos en su propia finca puesto que ellos no tenían derecho a cerrar la ventana del demandado, sin que antes se resolviera judicialmente si había o no servi dumbre legal a favor del demandado. La respuesta a esto es, desde luego, que los demandantes no cerraron la ventana del demandado, sino que meramente construyeron una cerca en su propia finca, cosa que tenían perfecto derecho a hacer, aunque ello diera por resultado impedir que el demandado continuara utilizando la finca de los demandantes para recibir la luz y el aire que anteriormente había recibido mediante la tolerancia de los demandantes, pero sin visos de derecho a continuar en el goce de tal privilegio.

Los demandantes alegaron como tercera causa de acción que las aguas pluviales caían sobre el suelo del solar de los demandantes, causando en éste la destrucción de sus jardines; que los demandantes habían suplicado al demandado que hiciera la construcción de su tejado en forma tal que sus aguas cayeran sobre su fundo o bien en la vía pública y el demandado se había negado a ello. Se suplicaba se dictara sentencia condenando al demandado que hiciera dentro de un término razonable sobre su tejado la obra necesaria para que sus aguas pluviales vertieran sobre su propio suelo o a la vía pública. El juez de distrito dijo que la prueba presentada para justificar esta causa de acción fué tan débil que no estaba justificado para dictar una sentencia en favor de los demandantes. También dijo que aun si pudiera admitirse que algunas goteras del tejado caían sobre la colindancia de ambas fincas, muy cerca de la pared, no por ello debía inferirse que las mismas causaran daño al demandante Polanco. Éste, dijo el juez, declaró que por mucho tiempo ha cultivado hermosas y costosas flores hasta la misma pared, lo que demostraba que el agua había sido más bien beneficiosa.

Podría admitirse que los daños ocasionados por las aguas pluviales que caían del tejado del demandado no eran muchos. Sin embargo, los demandantes hubieran tenido derecho por lo menos a daños nominales si los hubieran exigido. Mas no se solicitó indemnización por los daños causados por dichas aguas. Tampoco el derecho de los demandantes al remedio solicitado giraba sobre la cuestión de daños y perjuicios o sobre el importe de los mismos. La prueba fué más que suficiente para establecer el hecho de que caían aguas pluviales del tejado de los demandados sobre la finca de los demandantes. El artículo 593 del Código Civil prescribe:

"El propietario de un edificio está obligado a construir sus tejados o cubierta de manera que las aguas pluviales caigan sobre su propio suelo o sobre la calle o sitio público, y no sobre el suelo del vecino. Aun cayendo sobre propio suelo, el propietario está obligado a recoger las aguas de modo que no causen perjuicio al predio contiguo."

Los demandantes, a nuestro juicio, tenían derecho a que se dictara sentencia a su favor en las causas de acción segunda, tercera y cuarta, al igual que en la primera, y tal sentencia debió haber incluído las costas.

*Aquella parte de la sentencia apelada que es adversa a los demandantes debe ser revocada y en su lugar este tribunal dictará otra en su favor. En todos los demás aspectos la sentencia apelada debe ser confirmada.*

El Juez Presidente Sr. Del Toro no intervino.

El Juez Asociado Sr. Wolf está conforme con el resultado.*