OCTAVIO REYES GARCÍA, demandante, recurrido y recurrente, *v.* SECRETARIO DE HACIENDA, demandado, recurrente y recurrido.

*Números:* 12886 y 12564    *Resueltos:* 9 de marzo de 1962

*Félix Ochoteco*, abogado del recurrido y recurrente; *J. B. Fernández Badillo, Procurador General de Puerto Rico* y *Juan A. Faría, Procurador General Auxiliar,* abogados del recurrente y recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Por escritura pública de fecha 6 de mayo de 1949 otorgada ante el Notario don Antonio Quirós Méndez, el contribuyente Octavio Reyes García adquirió por compra a la sociedad Hernández Hermanos y Compañía ocho fincas rústicas dedicadas al cultivo de cañas de azúcar por precio total de $157, 782.38, incluyendo la plantación existente en las mismas en 16 de febrero del mismo año—a cuya fecha se hizo expresamente

retroactivo el contrato—varias edificaciones y cierto equipo agrícola. No medió entrega alguna de dinero en la transacción. El precio indicado fue satisfecho por el comprador mediante la asunción del pago de ciertas deudas que tenía contraídas la sociedad vendedora.(¹) Al procederse al otorgamiento las partes aclararon expresamente que del precio de la compraventa, "cincuenta mil dólares corresponden a las fincas propiamente dichas (²) y ciento siete mil setecientos ochenta y dos dólares con treinta y ocho centavos corresponden a las plantaciones y equipo..."

La prueba estableció en forma incontrovertida, y así lo determinó el tribunal a quo, que las edificaciones y el equipo tenían un valor respectivo de $5,000 y $2,000. Las plantaciones se valoraron, por tanto, en $100,782.38. Esta fue la cantidad que, como elemento de costo, figuró el contribuyente en su declaración de ingresos del año natural 1949. En la revisión de las planillas presentadas, el Secretario rechazó esta cantidad y solamente concedió como costo inicial la de $31,756.26, o sea, el importe que de los libros de contabilidad de la sociedad vendedora aparecía como invertida para levantar la plantación ($26,181.61) más un beneficio estimado obtenido por la vendedora en dicha transacción ($5,574.65). La diferencia entre lo reclamado ($100,782.38) y lo concedido ($31,756.26), o sea, $69,026.12, provocó el ajuste en

---

(¹) Las deudas cuyo pago se asumió fueron las siguientes:

| | |
|---|---|
| Central San Vicente, Inc. | $50,000.00 |
| Sociedad Agrícola Eugenio Pérez Claudio y Cía. | 26,217.25 |
| Carmelo, Eugenio y Ferdinand Pérez Martín | 24,200.55 |
| Puerto Rico Production Credit Association | 40,268.62 |
| Ochoa Fertilizer Corporation | 12,955.19 |
| Central San Vicente, Inc. (en cuenta corriente) | 4,140.57 |

Durante el año 1949 el comprador satisfizo las deudas de la Puerto Rico Production Credit y Ochoa Fertilizer Corporation, y abonó $20,000 a la Central San Vicente, Inc. En 1950 se pagaron los créditos hipotecarios de la Sociedad Agrícola Eugenio Pérez Claudio y Cía. y los hermanos Pérez Martín. El remanente de lo adeudado a la Central San Vicente, Inc. fue liquidado en 1951.

(²) Se refiere a los terrenos sin las mejoras ni las plantaciones.

el ingreso neto tributable del año 1949, y la consiguiente determinación de una deficiencia. Igual resultado se produjo en cuanto al siguiente año 1950, para el cual el contribuyente arrastró el balance de la pérdida del año anterior. No conforme con la determinación administrativa, el contribuyente recurrió al Tribunal Superior e impugnó ambas deficiencias.

Se celebró la vista correspondiente. El demandante presentó prueba documental abundante y el testimonio de tres testigos para sostener su posición de que la suma de $100, 782.38 era deducible como parte del costo para producir el ingreso representado por la conversión de las cañas en azúcar 1) porque así se convino expresamente entre las partes al consignarse explícitamente en la escritura de compraventa, y en ausencia de una imputación de fraude, tal manifestación de voluntad debe prevalecer; y, 2) porque, aun ignorando lo dicho precedentemente, la suma reclamada era razonable. El Secretario de Hacienda se limitó a presentar en evidencia las planillas originales archivadas por el contribuyente para los años en controversia, las notificaciones de deficiencia—que fueron admitidas al único fin de ilustrar la explicación de las partidas alteradas—,y un informe preparado por la Estación Experimental Agrícola de la Universidad de Puerto Rico que contiene una tabla demostrativa de costos de producción de caña en Puerto Rico durante la zafra 1945-46.([3])

---

([3]) Durante el curso del juicio, el Secretario intentó variar el fundamento que adujo en lo notificación de deficiencia para considerar la transacción efectuada como una disposición de activos de capital, invocando para ello el artículo 76 del Reglamento de 1924. Tal pretensión fue declarada sin lugar, y la querella continuó tramitándose y fue resuelta a base únicamente de establecer el importe de la deducción reclamada. El recurso de apelación interpuesto por el Secretario no cuestiona esta actuación del tribunal. Respecto a la procedencia de y el efecto en cuanto al peso de la prueba al aducirse nuevos fundamentos para sostener la deficiencia en el trámite judicial, véase, *Ramón* v. *Secretario de Hacienda*, 84 D.P.R. 440 (1962).

Después de exponer la teoría de ambas partes, el tribunal de instancia se expresó como sigue:

"A la luz de la evidencia en autos, ninguna de las partes está enteramente en lo correcto. No podemos hacer una conclusión exclusivamente a base de la aclaración y desglose final en la escritura número 3, que aunque no se expresa en la aclaración, pudo deberse a una cuestión del registro a los efectos del arancel. Hay que tomarla a la luz y conjuntamente con otros pactos y cláusulas de la propia escritura, y a la luz también de la escritura número 14, en donde la parte que ahora vendió al demandante, adquirió la propiedad. Las hipotecas de $26, 000 y $24, 000 y sus intereses que el demandante se obligó a pagar reservándose del precio de venta, eran un gravamen en su origen. Pero en adición, y mientras las fincas estuvieron en poder de Hernández Hnos., la vendedora constituyó otra hipoteca a favor de Central San Vicente por $50, 000 de la cual estas fincas respondían de $30, 000.

"Además del hecho mencionado en la escritura 14 de que estas fincas tenían más valor del allí demostrado, no vamos a creer que en circunstancias normales se hubiera dado $80, 000 en hipoteca sobre fincas con un valor de $50, 000. Por otra parte, surge sin lugar a duda que del precio de venta, $40, 268.82 constituía un crédito refaccionario preferente sobre el mismo cosecho, y tan lo fue, que hasta tanto no se satisficiera el mismo la Central debía considerar las cañas entregadas como de la vendedora Hernández Hnos. y no del comprador. Igualmente es claro que el crédito de Ochoa Fertilizer de $12, 955.19 fue un gasto de cultivo de esta cosecha.

"Estas cantidades suman $57, 364.58 que restados del precio total de $157, 782.38, arroja la suma de $100, 417.80. Si eliminamos los $417.80 que fueron intereses sobre las hipotecas, quedaría del precio de venta la cantidad exacta de $100, 000 como la parte que corresponde a las tierras y sus estructuras, cantidad ésta más en armonía con lo que demuestran otros factores presentes en la prueba que no ha sido necesario puntualizar, tales como costos de producción por tonelada de caña y un arrendamiento, y más en armonía con el hecho de que las fincas se adquirieron con gravámenes montantes a $80, 000, o sea ⅘ partes de su valor, y no en exceso de su valor.

"El sistema usado por el Secretario de considerar un costo del cosecho sólo a base de entradas en los libros de la vendedora

y otra fórmula que utilizó para determinar ganancia fue erróneo y no se sostiene a la luz de la prueba. A los fines de esta controversia el costo del cosecho debe ser el de $57, 364.58 y no el de $100, 782.38 utilizado por el contribuyente ni el de $31, 756.26 usado por el Departamento de Hacienda."

Ambas partes apelaron de la sentencia. El recurso del Secretario se limita a impugnar el pronunciamiento que exoneró al contribuyente del pago de una penalidad de 5% sobre las deficiencias.

1. La prueba presentada revela que el contribuyente se dedica a la agricultura desde el año 1930 y que ha tenido experiencia como tasador de cosechas de cañas; que rinde sus declaraciones de ingresos a base del sistema de pagado y recibido; que se interesó en adquirir el negocio agrícola de la sociedad Hermanos Hernández cuando ya había comenzado la zafra del año 1949; que se trataba de una finca "nueva", recién desmontada, y de terrenos accidentados; que en 26 de marzo efectuó un aprecio de la cosecha pendiente en las fincas de dicha sociedad, conocida como empresa Río Lajas, y al efecto preparó un estimado por piezas, clase de cultivo—cañas primavera (52.25 cuerdas), gran cultura (60.66 cuerdas) y retoños (215.50 cuerdas)—y tonelaje por cuerdas, que le dio un total de 13, 419 toneladas; que como se trataba de cañas que no necesitaban gastos adicionales de cultivo, pues las plantaciones estaban "cerradas" y en proceso de ser cortadas, las calculó a razón de $7.50 por tonelada, incluyendo la compensación federal de los pagos de beneficio, por haberse así discutido y convenido finalmente con el representante de la sociedad vendedora; que este estimado le dio un valor de la cosecha por la suma de $100, 652.50; que tasó la plantación pendiente a base de dicho estimado de caña en pie, pero no estrictamente del costo para levantar la plantación; que la cosecha produjo 13, 473.61 toneladas, de las cuales se entregaron para molienda 12, 257.61 toneladas y se destinaron alrededor de 1, 216 toneladas para semilla; que la cosecha molida produjo $124, 096.04, incluyendo el pago de beneficios

y la compensación que concede la central para arrastre y arrimo; [4] que después del corte de la caña se cultivaron los tocones en 328 cuerdas, y que estos tocones pueden valorarse a un promedio de $12.00 por cuerda; que la unidad agrícola adquirida fue posteriormente arrendada a su hijo por un canon de $8, 000 anuales.

Las escrituras admitidas en evidencia demuestran que la sociedad vendedora había adquirido las fincas el año anterior, 1948, por precio de $50, 000, cuyo pago fue totalmente aplazado y garantizado con hipoteca; que también había adquirido la plantación existente en la finca en enero de ese año—a punto de corte—por $70, 000; y que posteriormente se hicieron nuevas siembras—indudablemente se refiere a las 60.66 cuerdas de cañas de gran cultura. ■

Reiteradamente hemos resuelto que las determinaciones administrativas del Secretario de Hacienda están cobijadas por una presunción de corrección que cede ante prueba creíble y razonable que sostenga las contenciones del contribuyente, *Vilanova* v. *Secretario de Hacienda*, 83 D.P.R. 74 (1961); *Carrión* v. *Tesorero de Puerto Rico*, 79 D.P.R. 371, 381-2 (1956); *Vilanova* v. *Secretario*, 78 D.P.R. 807 (1955); *Compañía Marítima E. Moreno* v. *Descartes*, 78 D.P.R. 589 (1955); y que aunque esta prueba "no tiene que ser extraordinariamente persuasiva y fehaciente, ni clara, robusta y convincente, debe por lo menos ser del grado y medida de persuasión que se exige en todos los demás casos civiles", según dijimos en *Collazo* v. *Srio. Hacienda*, 82 D.P.R. 650, 656 (1961). En el presente caso el contribuyente impugnó con éxito la determinación administrativa, así lo resolvió el tribunal a quo al concluir que "el sistema utilizado por el Secretario de considerar un costo del cosecho sólo a base de entradas en los libros de los vendedores y otra fómula que utilizó para determinar la ganancia fue erróneo, y no se sostiene a

---

[4] No hemos podido determinar si se incluyen en esta suma los pagos por liquidación de mieles y de azúcar excedente.

la luz de la prueba." Presentada la prueba del contribuyente, correspondía al Secretario presentar evidencia en apoyo de sus contenciones, y la que aquí se presentó prácticamente equivalió a "cruzarse de brazos y descansar en la presunción de corrección", *Carrión* v. *Tesorero*, 79 D.P.R. 371, 384 (1956). Todo cuanto tenía que considerar el tribunal de instancia era si la prueba aducida por el contribuyente y que no fue contradicha en forma alguna, era digna de crédito y razonablemente sostiene su posición. Es cierto que no viene obligado a creer o aceptar el testimonio no contradicho de la parte interesada cuando éste es altamente improbable, *Snyder* v. *Commissioner*, 288 F.2d 36 (CA 7, 1961); *Clark* v. *Commissioner*, 266 F.2d 698 (CA 9, 1959); *Pool* v. *Commissioner*, 251 F.2d 233 (CA 9, 1957); *Winters* v. *Dallman*, 238 F.2d 912 (CA 7, 1956), o manifiestamente irrazonable, *Factor* v. *Commissioner*, 281 F.2d 100 (CA 9, 1960); *Payne* v. *Commissioner*, 268 F.2d 617 (CA 5, 1959); *Carter* v. *Commissioner*, 257 F.2d 595 (CA 5, 1958); cf. *Collazo* v. *Secretario de Hacienda, supra.* Nada hay específicamente en los autos que demuestre que no se le dio crédito a la prueba presentada por el contribuyente, la cual apreciada en conjunto es lo suficientemente persuasiva para sostener la posición que ha asumido en el pleito. De ahí que para la determinación final de la única cuestión planteada—costo inicial de la plantación de cañas—no pudiera hacerse caso omiso de la prueba que desfiló, que estableció el valor verdadero convenido por las partes, y sustituirse por un criterio distinto, o sea el de costo de reproducción de la plantación.(⁵) ▰

_____

(⁵) En el curso del juicio, el tribunal expresó correctamente la norma a aplicarse, según aparece de las manifestaciones que copiamos a continuación, pero aparentemente se ofuscó porque entendió que no había prueba de lo que se pagó por las plantaciones, y recurrió entonces al método alternativo del costo de reproducción, cuyo empleo se justificaría plenamente en ausencia de la prueba sobre el costo convenido por las partes:

"....Lo que me cuesta a mi una cosa, es el costo, aunque resulte un costo inflado. Hay que reconocerlo. Yo compro una casa en $10,000.00 y, porque me ofusqué, o por cualquier circunstancia, si luego la vendo, si

Estimamos que el contribuyente controvirtió en forma satisfactoria la presunción de corrección de la determinación administrativa, no sólo en cuanto a su obligación de ofrecer prueba creíble y razonable para sostener su contención, sino en cuanto al efecto de la misma en su función de persuadir al juzgador. *Vilanova* v. *Secretario de Hacienda*, 83 D.P.R. 74 (1961); *Collazo* v. *Secretario de Hacienda*, 82 D.P.R. 650 (1961); *Carrión* v. *Tesorero de Puerto Rico*, 79 D.P.R. 371, 381-382 (1956). Habiendo concluido que la determinación del Secretario fue errónea, nos corresponde determinar la base para la computación correcta de la contribución. [6] ▮

El punto de partida tiene que ser necesariamente el precio que contemplaron las partes en la escritura de compraventa para la plantación de cañas existentes, o sea, la suma de $100,782.38. A poco que reflexionemos se observará que ésta no es una cifra irreducible, pues de la prueba presentada por el propio contribuyente surge la información que nos permite fijar en forma bastante adecuada y confiable el verdadero costo de las cañas que produjeron el ingreso de $124,096.04 al convertirse en azúcares. El precio indicado de $100,782.38 incluye las cañas entregadas a los ingenios

---

tengo una ganancia capital, ese es mi costo, aunque de la situación aparezca que nunca, nadie, por ella sacó más de $6,000.00. Pero, como yo pagué $10,000.00 y eso está limpio de fraude, ese es mi costo. El aparente problema en este caso es que la escritura no dice que se pagó X cantidad por las plantaciones. No habría pleito. A mi me tendrían que probar que fue una combinación con propósito de defraudar. Si dijera que se pagó por las plantaciones X cantidad, ese sería el costo. Entonces, hay que ir, por otras vías, a determinar un costo. Y cuando hay que ir por esas otras vías, es que le digo estamos por el camino limitado de las deducciones, donde tenemos que ir con un sentido restrictivo y el compañero lo sabe, que esa es la jurisprudencia. Si en esa forma alternativa, yo tengo que determinar el costo de esas plantaciones, lo tendré que hacer considerando lo que invirtieron real y efectivamente para moler esa caña que luego produjo ese ingreso."

[6] En Puerto Rico, tanto bajo la legislación de 1924 como la de 1954, el beneficio obtenido en la disposición de una cosecha pendiente se considera como ingreso ordinario. Artículos 76, 110 y 121 del Reglamento de 1924 (ed. en inglés), págs. 55, 73 y 79. La misma solución prevalecía en la jurisdicción federal hasta la aprobación en 1951 de una enmienda a la sección 117 (j) (1) de la Ley de Rentas Internas de 1939, *Watson* v. *Com-*

y molidas por éstos, una partida de $417.80 pagada por intereses sobre los préstamos hipotecarios, y que claramente no constituye un gasto de la plantación, así como el valor de los tocones que fueron cultivados en años sucesivos y el costo de las 1, 216 toneladas de caña que se destinaron por el colono para semillas. Precisa pues que deduzcamos el importe del valor de los tocones—328 cuerdas a $12.00 por cuerda— ascendente a $3. 936, y el costo de las 1. 216 toneladas de caña para semilla, que a nuestro juicio, ascendió a $8, 706.56. ([7]) El costo de las 12, 257.61 toneladas entregadas a las centrales fue de $87,722.02. ([8])

2. El Secretario de Hacienda apeló de la sentencia en cuanto al pronunciamiento del juez que posteriormente intervino en el incidente sobre aprobación de cómputos excluyendo de la deficiencia el importe de la penalidad provista por la

---

missioner, 345 U.S. 544 (1953), 197 F.2d 56 (CA 9, 1952); cf. McCoy v. Commissioner, 192 F.2d 486 (CA 10, 1951), mediante la cual se concede, bajo ciertas condiciones, en los casos de cosechas pendientes, el beneficio de declarar la ganancia obtenida como si se tratara de la disposición de activos de capital. Véase, Dakin, The Capital Gains Treasure Chest: Rational Extension or Expedient Distortion?, 14 La. L. Rev. 505 (1959); Farmers and The Federal Income Tax, 19 U. Ch. L. Rev. 522, 532-533 (1952); Ordinary Income or Capital Gain in the Sale of an Orange Grove, 4 Miami L. Q. 145 (1950). Al adoptarse localmente en 1954 las disposiciones de la Ley Federal de 1939 se omitieron las secciones que permiten el alivio especial a ciertas clases de contribuyentes-ventas de bosques, ganado y cosechas pendientes. Véase, sección 117(g) de la Ley de Contribución sobre Ingresos de 1954, 13 L.P.R.A. sec. 3117, y el artículo 117 (j)-1 del Reglamento, 13 R.&R.P.R. sec. 3117-1. En general, puede consultarse, Mertens, Law of Federal Income Taxation, (rev. Zimmet y Weiss), vol. 3B, secs. 22.123, 22.131 y vol. 3A, secs. 21.255 y 21.256. Corresponde a la Asamblea Legislativa determinar si la situación de la ganadería y del agro puertorriqueño requiere el estímulo que representa una medida de esta naturaleza.

([7]) Hemos determinado esta cantidad en la siguiente forma:

| | |
|---|---|
| Precio consignado en la escritura | $100, 782.38 |
| Menos: Valor de los tocones y partida de intereses | 4, 353.80 |
| Costo de 13, 473.61 toneladas cosechadas | $96, 428.58 |
| Costo promedio por tonelada | 7.16 |
| 1, 216 toneladas de caña a razón de $7.16 por tonelada | $8, 706.56 |

([8]) Aun cuando hubiésemos aceptado la fórmula elaborada por el tribunal a quo, o sea, el costo de reproducción de la plantación según representado por las distintas partidas de refacción y gastos de cultivo cuyo

sección 58 de la Ley de Contribuciones sobre Ingresos de 1924, 13 L.P.R.A. sec. 776, para el caso de negligencia o ignorancia intencional de las reglas y reglamentos, pero sin la intención de defraudar. *Puerto Rico Telephone* v. *Secretario de Hacienda,* 79 D.P.R. 895 (1957) ; *Quiñones* v. *Secretario de Hacienda,* 77 D.P.R. 109 (1954). Arguye el Secretario de Hacienda que en la querella presentada por el contribuyente no se impugnó expresamente la imposición de la penalidad contenida en la notificación de deficiencia. En *Buscaglia* v. *Tribunal de Contribuciones, Arcelay de la Rosa, Interventor,* 67 D.P.R. 13, 16 (1947) dijimos que "La vista sobre el cómputo, de celebrarse alguna, debe limitarse a una controversia matemática. A las partes hay que hacerles comprender que no pueden litigar sus pleitos fragmentariamente. Deben presentar todo su caso en el juicio en los méritos. La vista en cuanto al cómputo debe limitarse solamente a esa cuestión, y no puede utilizarse como un recurso para relitigar las cuestiones que fueron o debieron haberse presentado al Tribunal de Contribuciones en la vista sobre los méritos. *González Padín Co., Inc.* v. *Tribunal de Contribuciones,* 66 D.P.R. 964. Si cualquiera de las partes pretende en ese momento levantar un punto que debió haberse litigado dentro del procedimiento propiamente dicho, el Tribunal de Contribuciones debe negarse a oírlo, a no ser a tenor con una moción para que se

---

pago asumió el comprador, y que arrojaron un resultado de $57, 364.58, siempre tendríamos que adicionarle el estimado de los pagos federales de beneficios, ya que de acuerdo con la evidencia no contradicha, las partes lo incluyeron al considerar y fijar el precio de la plantación. Calculado a razón de $1.70 por tonelada, este pago ascendería a $20,847.93, considerando que se entregaron 12, 257.61 toneladas. Se aumentaría el costo a $78, 212.51. La diferencia entre esta suma y la que hemos fijado como costo es solamente de cerca de $9, 500.00.

Del estimado de tasación de las cañas, preparado por el demandante aparece que la cosecha se valoró a $7.50 por tonelada, que cubría $5.80 de gastos de cultivo hasta que la plantación estuvo "cerrada", según el testimonio reiterado, y $1.70 por el pago federal de beneficios. La diferencia entre el estimado de producción hecho por el contribuyente—13, 419 toneladas—y el volumen realmente producido—13, 473.61 toneladas—fue mínima.

deje sin efecto la decisión y se celebre una nueva vista con enmiendas apropiadas de las alegaciones. Y el Tribunal de Contribuciones debe declarar con lugar esa moción en muy raras ocasiones y solamente por los motivos más sustanciales." En *Comunidad Fajardo* v. *Tribunal de Contribuciones*, 73 D.P.R. 543, 558 (1952) añadimos que cuando el tribunal de instancia entra en los méritos de nuevas cuestiones sustanciales al sometérsele un cómputo, nos hemos negado a revocar en algunos casos por ese fundamento, siempre que ambas partes hayan tenido su oportunidad en corte. En *Central Roig Ref. Co.* v. *Srio. Hacienda*, 83 D.P.R. 904 (1961), permitimos que se planteara, bajo las circunstancias que allí concurrían, una cuestión nueva en el incidente sobre aprobación de cómputos, y para ello consideramos, entre otros factores, que la alegación planteada no requería la celebración de una vista para ventilar cuestiones de hecho, y que, en todo caso, el escrito sobre impugnación de cómputo podía considerarse como una alegación suplementaria, que en nada perjudicaba al Secretario por tratarse de una cuestión puramente de derecho. ▪

Interpretadas las alegaciones de la querella en la forma más liberal puede sostenerse que la alegación del querellante de que "no adeuda cantidad alguna al demandado por concepto de contribución sobre ingresos" para los años en controversia, planteó en forma suficiente la procedencia de la imposición de la penalidad. Igualmente, consideradas todas las circunstancias del caso, no estamos convencidos de que el contribuyente no incurrió en negligencia o ignorancia intencional de los reglamentos. *Puerto Rico Telephone* v. *Secretario de Hacienda*, *supra*, a la pág. 938; cf. *Freeman* v. *Noguera, Secretario de Hacienda*, 82 D.P.R. 307, 319-320 (1961); *Hatfried* v. *Commissioner*, 162 F.2d 628 (CA 3, 1947). No se cometió el error señalado en la apelación del Secretario.

*Se modificará la sentencia para fijar el costo de la plantación de cañas adquirida por el contribuyente en la suma de $87,722.02, en lugar de $57,364.58 como determinó el Tribunal Superior, Sala de San Juan, y se devolverá el caso para la radicación y aprobación de nuevos cómputos a tenor con esta determinación.([9])*

---

([9]) El contribuyente determinó en su planilla una pérdida neta de $30,600.42 para el año 1949, que se reducirá a $17,540.06. Esta es la pérdida arrastrable para el siguiente año 1950. Habiendo el contribuyente tenido un ingreso neto tributable de $15,254.54 en 1950, éste se reajustará de conformidad, y se determina un aumento en dicho ingreso neto, que para los fines de tributación se fija en $28,314.94.