ENRIQUE GARCÍA DÍAZ, demandante y recurrente, v. SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* R-63-228        *Resuelto:* 17 de noviembre de 1964

*Luis E. García Benítez, y Juan A. Faría,* abogados del recurrente; *J. B. Fernández Badillo, Procurador General, y Américo Serra, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Don Enrique García Díaz poseía en arrendamiento dos fincas rústicas situadas en el barrio Turabo de Caguas, Puerto Rico. Por la escritura Núm. 213 de 2 de junio de 1955,

otorgada ante el Notario don Luis Morales Contreras, el señor García Díaz vendió a don Vicente Santos Ramos, ciertas edificaciones, una bomba de agua y aproximadamente 32 cuerdas de raíces de caña que había en las fincas y además rescindió el contrato de arrendamiento por un precio global de $16,000.00.

En la planilla de contribución sobre ingresos correspondiente al año 1955, el señor García Díaz determinó su beneficio en dicha venta así:

| "Precio de venta | | $16,000.00 |
|---|---|---|
| Menos: Costas: | | |
| 1. Edificaciones | $1,900.00 | |
| 2. Bomba | 231.20 | |
| 3. Raíces de caña · | — | 2,131.20 |
| | | |
| Beneficio obtenido | | $13,868.80 |
| 25% *Capital Gain* | | 3,467.20" |

Este beneficio incluía el precio de venta de (a) las raíces de caña y (b) la compensación que le fue pagada en concepto de la rescisión del contrato de arrendamiento.

El Secretario de Hacienda notificó al contribuyente señor García Díaz una deficiencia para el año 1955 y en la misma le negó el derecho de acogerse a los beneficios de ganancia de capital (*Capital Gain*) en la venta antes mencionada, y determinó como ingreso ordinario del contribuyente, el 100% de dichos $13,868.80.

Después de haber recaído la determinación final del Secretario de Hacienda, el contribuyente recurrió ante el Tribunal Superior, Sala de San Juan. Trabada la contienda se celebró un juicio durante el cual el demandante trató de presentar evidencia sobre la parte del precio de venta que corresponde a la plantación de raíces de caña y la que correspondía a la rescisión del contrato de arrendamiento. El Tribunal denegó su admisión bajo la teoría de que dicha evidencia tendería a variar los términos de un contrato escrito. Pos-

teriormente dicho Tribunal dictó una sentencia enmendada, resolviendo, en lo aquí pertinente, lo siguiente:

"Del precio de venta $16,000.00 el demandante declaró un beneficio de $13,868.00 rebajando $2,131.00 como costas de edificaciones ($1,900.00) y bomba $231.00.

¿Procede la imposición de la contribución sobre el 100% del beneficio $13,868.00 o sobre el 25% de esos $13,868.00 como ganancias de capital (capital gain)?

Hasta el año 1954 el demandante había reclamado el costo total de las raíces.

En el beneficio de $13,868.00 está incluído el precio o consideración dado en la venta por la rescisión del arrendamiento y opción de prórroga de 5 años. En la planilla el contribuyente incluye los $13,868.00 como venta de activo de capital a largo plazo en equipo, raíces de caña, etc. No puede por tanto determinarse el beneficio exclusivamente sobre las raíces de caña cuando en el precio de la venta se tomó en consideración la plantación de cañas, un rancho, una bomba, una casa de maderas, un establo y la *rescisión del contrato*.

*Procede por tanto* que en vista de los beneficios, si algunos, que derivaba el demandante de la finca y su inversión en las siembras con arreglo a años anteriores *se determine el valor de las siembras y el valor a concederse por la rescisión. El valor que se conceda por la rescisión se considerará como ganancias de capital y el valor de las siembras como ingreso ordinario*. [Bastardillas nuestras.]

.    .    .    .    .    .    .

Una vez hecha esta determinación se fijará la contribución a pagar por el demandante."

La sentencia fue dictada el día 16 de mayo de 1963. En junio 4 ó 5 del mismo año el Secretario de Hacienda notificó al contribuyente que de acuerdo con los términos de la resolución dictada por el Tribunal Superior había determinado el ingreso neto y computado la contribución a pagar. El día 7 del mismo mes el Secretario de Hacienda sometió los cómputos contributivos al Tribunal Superior para su aprobación. El contribuyente radicó objeciones a los cómputos. Alegó que el Secretario de Hacienda hizo una determinación *ex parte* del

valor de las raíces de cañas y de la rescisión del arrendamiento, sin darle una oportunidad de ser oído sobre dicha valoración. Solicitó en su consecuencia que el Tribunal celebrara una vista para recibir prueba sobre esos extremos y pudiera hacerse una determinación judicial del valor de las raíces de caña y de la rescisión del contrato de arrendamiento.

El Tribunal señaló una vista para la aprobación de los referidos cómputos pero no permitió la presentación en evidencia por los motivos que consignó en una resolución que en parte dispone:

"Con vista de la sentencia dictada y con el propósito de hacer justicia sustancial se dio oportunidad a las partes para determinar el valor de la rescisión del contrato. El demandado, con arreglo a la sentencia, dio un valor a la rescisión de $8,753.86. El demandante no trató administrativamente de ofrecer datos o prueba para que el demandado hiciera su determinación en cuanto a este particular.

Lo que pretende hacer ahora en esta etapa del procedimiento no puede hacerlo. La vista en cuanto al cómputo tiene que limitarse a una controversia matemática. *Reyes* v. *Secretario de Hacienda*, Sentencia de marzo 9, 1962, Caso 12886 y 12564.

Se aprueban los cómputos contributivos."

■ Sostiene el recurrente que el Tribunal sentenciador cometió error al resolver que el producido de la venta de raíces de caña sea considerado como ingreso ordinario y no como ingreso de la venta de un activo de capital.

Nos parece que esta contención fue resuelta en su contra en el caso de *Reyes García* v. *Srio. de Hacienda*, 84 D.P.R. 596 (1962), cuando allí dijimos en el escolio 6:

"En Puerto Rico, tanto bajo la legislación de 1924 como la de 1954, el beneficio obtenido en la disposición de una cosecha pendiente se considera como ingreso ordinario. Artículos 76, 110 y 121 del Reglamento de 1924 (ed. en inglés), págs. 55, 73 y 79. La misma solución prevalecía en la jurisdicción federal hasta la aprobación en 1951 de una enmienda a la sección 117(j)(1) de la Ley de Rentas Internas de 1939, *Watson* v. *Commissioner*, 345 U.S. 544 (1953), 197 F.2d 56 (CA 9, 1952); cf. *McCoy* v. *Commissioner*, 192 F.2d 486 (CA 10, 1951), mediante la

cual se concede, bajo ciertas condiciones, en los casos de cosechas pendientes, el beneficio de declarar la ganancia obtenida como si se tratara de la disposición de activos de capital. Véanse, Dakin, *The Capital Gains Treasure Chest: Rational Extension or Expedient Distortion?*, 14 La. L. Rev. 505 (1959); *Farmers and The Federal Income Tax*, 19 U. Chi. L. Rev. 522, 532–533 (1952); *Ordinary Income or Capital Gain in the Sale of an Orange Grove*, 4 Miami L.Q. 145 (1950). Al adoptarse localmente en 1954 las disposiciones de la ley federal de 1939 se omitieron las secciones que permiten el alivio especial a ciertas clases de contribuyentes—ventas de bosques, ganado y cosechas pendientes. Véanse, sección 117(g) de la Ley de Contribución sobre Ingresos de 1954, 13 L.P.R.A. sec. 3117, y el artículo 117 (j)-1 del Reglamento, 13 R.&R.P.R. sec. 3117–1. En general, puede consultarse, Mertens, *Law of Federal Income Taxation*, (rev. Zimmet y Weiss), vol. 3B, secs. 22.123, 22.131 y vol. 3A, secs. 21.255 y 21.256. Corresponde a la Asamblea Legislativa determinar si la situación de la ganadería y del agro puertorriqueño requiere el estímulo que representa una medida de esta naturaleza."

Además convenimos con la siguiente argumentación del Secretario de Hacienda:

"Aun en la jurisdicción federal, donde se concede, bajo ciertas condiciones, el beneficio de ganancias de capital en las ventas de cosechas pendientes, se ha resuelto que constituye ingreso ordinario la ganancia obtenida en la venta de cosechas pendientes cuando el terreno donde se encuentra dicha cosecha no es de la propiedad del contribuyente, sino que es poseído en arrendamiento por dicho contribuyente. Véase *Bidart Bros.* v. *United States*, 262 F.2d 607, cert. den. 359 U.S. 1003.

Existe una razón adicional por la cual debe considerarse la ganancia obtenida en el presente caso como ingreso ordinario. En su planilla de ingresos para el año en controversia, el contribuyente no reclamó costo alguno de las raíces de caña. Es lógico que así fuese, pues dichos costos habían sido reclamados como gastos de operación en los años en que se incurrió en los mismos. Por lo tanto, al venderse, la base o costo de dichas raíces es cero y la cantidad íntegra recibida en la venta es ingreso, ya que no había costo al cual aplicarse."

Consideramos, sin embargo, que el Tribunal Superior debió hacer su propia determinación sobre el valor de la

rescisión del contrato de arrendamiento. Para ello debió concederle una oportunidad a las partes para presentar evidencia sobre ese hecho. Cuando el demandante trató de hacerlo durante el juicio, se negó la admisión de la evidencia bajo el *parol evidence rule* (Art. 25, Ley de Evidencia, 32 L.P.R.A. sec. 1168).[1]

■ Correcta o no esa decisión del Tribunal fundada en el Art. 25 de la Ley de Evidencia, sobre inadmisibilidad de la evidencia ofrecida, ningún precepto legal impedía recibir prueba en ese momento, sino del precio por separado convenido por las partes en el contrato por las raíces de caña y la rescisión, por lo menos debió recibirse prueba sobre el valor de uno y otro. Como consecuencia, al dictar el Tribunal su sentencia resolviendo que el ingreso por concepto de la rescisión del contrato era ganancia de capital, se encontró imposibilitado de fijar el importe de dicho ingreso por ausencia de prueba sobre ello.

■ Por eso la sentencia se limita a decir: "Procede por tanto . . . se determine el valor de las siembras y el valor a concederse por la rescisión."

¿Cómo y por quién se hizo esa determinación? La hizo el Secretario de Hacienda, sin oir al demandante y la consignó en los cómputos que presentó al Tribunal. En esta etapa el demandante previa impugnación por escrito de los cómputos, trató nuevamente de presentar prueba sobre el valor de la rescisión del contrato pero no le fue permitido porque de

---

[1] La regla que excluye evidencia extrínseca para contradecir o variar los términos de un convenio escrito, se aplica a las partes en el contrato o sus representantes o sucesores en interés. Aquí el pleito es entre una de las partes en el contrato y el Secretario de Hacienda, un tercero que no fue parte ni copartícipe. Art. 25, Ley de Evidencia; *Nicorelli* v. *Ernesto López & Cía.*, 26 D.P.R. 55 (1917); *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816 (1953); *Polanco* v. *Ruiz*, 55 D.P.R. 785 (1935). Por otro lado, no vemos como la prueba sobre el precio por separado de las raíces de cañas y el de la rescisión del contrato, puede variar o contradecir la escritura de compraventa, cuando en ésta se consigna un precio global por las dos cosas. Cf. *Polanco* v. *Ruiz, supra.*

acuerdo con el caso de *Reyes García* v. *Srio. de Hacienda,* supra, la vista para la aprobación de los cómputos debe limitarse a una controversia matemática. Aunque esa es la doctrina correcta, (²) el Tribunal pudo en ese momento, a fin de resolver la controversia surgida entre las partes sobre el valor de la rescisión del contrato, dejar sin efecto su sentencia, oir la prueba, y luego de resolver, ordenar la radicación de nuevos cómputos.

*En vista de todo lo expuesto debe dejarse sin efecto la sentencia del Tribunal Superior y ordenarse una vista ante dicho Tribunal, a los únicos fines de recibir evidencia pertinente sobre el valor de las siembras de caña y de la rescisión del contrato de arrendamiento, con los subsiguientes procedimientos de ley.*

--------

(²) Véase, sin embargo, *Central Roig Refining Co.* v. *Secretario de Hacienda,* (Per Curiam) resuelto en 14 de abril de 1961.